765 N.W.2d 443 (2009)
277 Neb. 776
In re INTEREST OF SPENCER O., a child under 18 years of age.
State of Nebraska, Appellee,
v.
Spencer O., Appellant.
Nos. S-08-583, S-08-584.
Supreme Court of Nebraska.
May 15, 2009.
*444 Dennis R. Keefe, Lancaster County Public Defender, Jennifer M. Houlden, and Sara Newell, for appellant.
Karen Knight and Sarah E. Preisinger, Senior Certified Law Student, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
Under Neb.Rev.Stat. § 43-1312(3) (Reissue 2004), every child in state-supervised foster care must have a permanency hearing no later than 12 months after the child enters foster care. At a permanency hearing, the court reviews and adopts a permanency plan for the child. A permanency plan focuses on providing the child with a safe, stable, and nurturing environment and is the guiding philosophy when courts remove children from their home.[1]
Because of his misdemeanor violations, Spencer O., a child under 18 years of age, was subject to the juvenile court's jurisdiction under Neb.Rev.Stat. § 43-247(1) (Cum. Supp. 2006). Because Spencer's delinquent behavior resulted in his being placed in foster care, the Department of Health and Human Services (DHHS) requested a permanency hearing under § 43-1312(3). Spencer objected to the hearing. He claimed that § 43-1312(3) does not apply to juveniles who are in foster care because of their delinquent behavior instead of parental abuse or neglect. The juvenile court disagreed with Spencer and ordered a permanency hearing. The court approved DHHS' suggested permanency plan of reunification of Spencer with his mother.
Spencer argues that the court erred in holding a permanency hearing under § 43-1312(3) and adopting the permanency plan. We conclude that § 43-1312(3) applies to Spencer and, therefore, affirm the decision of the juvenile court.

BACKGROUND
In two separate cases, the State charged Spencer with two counts of criminal mischief and four counts of third degree assault. Because he was a minor and had committed misdemeanor offenses, he was subject to the juvenile court's jurisdiction under § 43-247(1). In May 2006, Spencer pleaded no contest to one count of criminal mischief and one count of third degree *445 assault. In July 2006, he pleaded no contest to one count of criminal mischief and one count of third degree assault. In November 2007, he entered an admission to one count of third degree assault. The State dismissed the remaining count of third degree assault.
As part of the proceedings, the court held two hearings regarding Spencer's disposition and placement. The first hearing occurred in August 2006, and the court committed Spencer to the custody of the Office of Juvenile Services (OJS) for inhome placement. Because of additional delinquent behavior, however, OJS eventually removed Spencer from his home and placed him in a juvenile detention center. In November 2007, while still in custody of OJS, the juvenile court placed Spencer at a residential treatment center.
Later, in March 2008, DHHS requested, under § 43-1312(3), a permanency hearing. DHHS argued that because of Spencer's out-of-home placement, the court had placed him in foster care.[2] And because § 43-1312(3) requires a permanency hearing for "[e]ach child in foster care," the statute required the court to conduct a permanency hearing.
Spencer objected to the permanency hearing. He conceded that he was in foster care. But because the court's jurisdiction arose under § 43-247(1) (delinquent child), he argued that § 43-1312(3) did not apply. He argued that the court should have interpreted subsection (3) with subsections (1) and (2) of § 43-1312 and limited permanency hearings to those children subject to the court's jurisdiction under § 43-247(3), (4), or (9). DHHS argued that § 43-1312(3) should be read independently from subsections (1) and (2).
The court held that § 43-1312(3) required every child in foster care to have a permanency hearing, even those subject to the court's jurisdiction under § 43-247(1). The court conducted a permanency hearing in April 2008. At the hearing, the court approved a permanency plan that reunited Spencer with his mother.

ASSIGNMENTS OF ERROR
Spencer asserts that the juvenile court erred in holding a permanency hearing under § 43-1312(3) and that by having the hearing, the court violated his due process rights.

STANDARD OF REVIEW
[1,2] We review juvenile cases de novo on the record, and we reach a conclusion independent of the juvenile court's findings.[3] Determining whether a permanency hearing is required under § 43-1312(3) presents a question of law. We independently decide questions of law.[4]

ANALYSIS
Section 43-1312 outlines the procedure and requirements for permanency hearings:
(1) Following the investigation conducted pursuant to section 43-1311 and immediately following the initial placement of the child, the person or court in charge of the child shall cause to be established a safe and appropriate plan for the child. . . .
. . . .

*446 (2) If the return of the child to his or her parents is not likely based upon facts developed as a result of the investigation, the Department of Health and Human Services shall recommend termination of parental rights and referral for adoption, guardianship, placement with a relative, or, as a last resort, another planned permanent living arrangement.
(3) Each child in foster care under the supervision of the state shall have a permanency hearing by a court, no later than twelve months after the date the child enters foster care and annually thereafter during the continuation of foster care. The court's order shall include a finding regarding the appropriateness of the permanency plan determined for the child. . . .
[3] Spencer contends that the juvenile court erred in finding that the permanency hearing requirement in § 43-1312(3) applies to every child in foster care despite the statutory procedure used by the juvenile court in acquiring jurisdiction over the child. He argues that § 43-1312(3) does not require a permanency hearing for children who are in foster care because of their adjudication under § 43-247(1). The State contends that the plain language of § 43-1312(3) mandates a hearing for every child in foster care. We have not previously decided whether the statute mandates a permanency hearing for every child in foster care or whether the statute limits permanency hearings to children identified in § 43-1312(1).
The juvenile code does not define "foster care." However, § 43-1301(4) defines "[fjoster care placements" to include "all placements of . . . delinquent children." Obviously, this definition is broad enough to include children placed outside their home because of delinquency. Also, Neb. Rev.Stat. § 43-1301.01 (Reissue 2008) provides that "a child is deemed to have entered foster care . . . sixty days after the date on which the child is removed from the home." This section also supports our conclusion that foster care includes removal from the home because of delinquency.
Section 43-1312(3) mandates that "[e]ach child in foster care . . . shall have a permanency hearing. . . ." The language of § 43-1312(3) does not limit the permanency hearing requirement to children in foster care for reasons other than delinquent acts. While § 43-1312(1) may refer to children in foster care because of an investigation conducted under Neb.Rev. Stat. § 43-1311 (Reissue 2004), § 43-1312(3) contains no such limitation. Subsection (3) simply states that a permanency hearing is required for every child in foster care placement.
[4] Absent anything to the contrary, we will give statutory language its plain and ordinary meaning.[5] We recognize that the court placed Spencer in foster care because of his delinquent behavior. But nothing in § 43-1312(3) exempts children in foster care because of their delinquency from the permanency hearing requirement.
Additionally, requiring a permanency hearing in delinquency cases appears consistent with the purpose of such hearing. A permanency hearing allows the court to review the appropriateness of a plan for a child in foster care.[6] Furthermore, § 43-533(4) provides that when a court removes a child from his or her home, "permanency planning shall be the guiding philosophy." Read together, the statutes suggest that no matter why a court removes a child from his or her homewhether it is for *447 delinquency or parental abuse or neglect the Legislature intended a review of the long-term plans for any child in foster care. Thus, we conclude that the juvenile court did not err in holding a permanency hearing.
[5] Because § 43-1312(3) requires a permanency hearing for every child in foster care, including delinquent children in foster care, we now address Spencer's argument that the permanency hearing violated his due process rights.
Spencer does not contest the substance of the permanency plan. Nor does he argue that the court did not properly notify him of the permanency hearing proceedings. Instead, he argues he received insufficient notice of the potential consequences of the permanency hearing. Specifically, he claims that the court did not inform him of all the options contemplated in § 43-1312(3), such as the termination of parental rights, adoption, and guardianship. He claims that because the court never informed him that it could terminate his mother's parental rights, he did not knowingly or intelligently enter his no contest pleas. We interpret his argument to mean that because the court did not inform him of the possibility of parental rights termination, the court's adjudication violated his due process protections.
[6, 7] The law affords due process protection to the parent-child relationship.[7] While the concept of due process defies precise definition, it embodies and requires fundamental fairness.[8] Generally, procedural due process requires timely notice, reasonably calculated to inform the person concerning the subject and issues involved in the proceeding.[9]
At each hearing, the court informed Spencer that while in the custody of OJS, the court could place him in his mother's home, with services provided to him there, or could place him in a youth rehabilitation treatment center or other out-of-home setting such as a group home or treatment center. It is true that the court never informed him that it could terminate his mother's parental rights.
But, assuming without deciding that a juvenile adjudicated in a delinquency hearing is entitled to notice that the court could terminate parental rights, such termination was not a possibility when Spencer entered his plea. The court placed Spencer in the custody and care of OJS, an office charged with providing delinquent juveniles treatment in a manner consistent with public safety.[10] OJS did not have the authority to terminate Spencer's mother's parental rights.[11] To terminate parental rights, the State would first have to file a new petition under § 43-247(3) or Neb. Rev.Stat. § 43-291 (Reissue 2008). Either proceeding would be a separate case and not part of the delinquency proceedings. Thus, although § 43-1312(3) lists as an option the termination of parental rights, that was not a possibility in the State's delinquency case against Spencer.
Because termination of parental rights was not a possibility in Spencer's delinquency proceedings, we conclude that he received adequate notification of all possible consequences of his no contest plea.
AFFIRMED.
NOTES
[1] Neb.Rev.Stat. § 43-533(4) (Reissue 2008).
[2] Neb.Rev.Stat. § 43-1301(3) and (4) (Reissue 2008).
[3] In re Interest of Taylor W., 276 Neb. 679, 757 N.W.2d 1 (2008).
[4] Lagemann v. Nebraska Methodist Hosp., 277 Neb. 335, 762 N.W.2d 51 (2009).
[5] In re Estate of Cooper, 275 Neb. 297, 746 N.W.2d 653 (2008).
[6] In re Interest of Sarah K., 258 Neb. 52, 601 N.W.2d 780 (1999).
[7] In re Interest of L.V., 240 Neb. 404, 482 N.W.2d 250 (1992).
[8] Zahl v. Zahl, 273 Neb. 1043, 736 N.W.2d 365 (2007).
[9] Id.
[10] Neb.Rev.Stat. § 43-402 (Reissue 2008).
[11] See, generally, Neb.Rev.Stat. §§ 43-401 to 43-423 (Reissue 2008).