Linda N., on behalf of a minor child, Rebecca N.,
appellee and cross-appellant, v. William N.,
appellant and cross-appellee.

___ N.W.2d ___

Filed December 5, 2014.    No. S-14-152.

1.  **Judgments: Injunction: Appeal and Error.** A protection order is analogous to an injunction. Accordingly, the grant or denial of a protection order is reviewed de novo on the record.
2.  **Evidence: Appeal and Error.** Where the credible evidence is in conflict on a material issue of fact, an appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3.  **Judgments: Pleadings: Affidavits.** In order to obtain a domestic abuse protection order, the petitioner must file a petition and supporting affidavit in the district court.
4.  **Legislature: Courts.** The Legislature is deemed to be aware of existing Nebraska Supreme Court precedent when it enacts legislation.
5.  **Legislature: Intent.** The legislative intent of the language in Neb. Rev. Stat. § 42-903 (Cum. Supp. 2014) is to allow a victim of abuse, law enforcement, and prosecutors to take steps toward preventing a threatened act of domestic abuse from actually becoming an act that leads to physical harm of the victim.
6.  **Trial: Evidence: Words and Phrases.** The "credible threat" language in Neb. Rev. Stat. § 42-903 (Cum. Supp. 2014) means that the evidence at trial must include some threat of intentional physical injury or any other physical threat.
7.  **Judgments.** Where there is no threat of harm to the petitioner, a domestic abuse protection order is not appropriate.
8.  **Judgments: Pleadings: Courts.** A county court or district court has the statutory authority to issue a harassment protection order, where the petition was instead for a domestic abuse protection order.
9.  **Actions: Parties: Appeal and Error.** An appellate court reviews a case on the theories pursued by the parties, not on a theory that the parties might have raised.
10.  **Pleadings: Appeal and Error.** An appellate court is obliged to dispose of a case on the basis of the theory presented by the pleadings on which the case was tried.
11.  **Appeal and Error.** A party cannot complain of error which the party has invited the court to commit.
12.  ____. An appellate court will not consider an issue on appeal that the trial court has not decided.
13.  ____. When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

14. **Actions: Judgments.** If a judge deems appropriate, at a hearing on a domestic abuse or harassment protection order, a judge should explain the requirements for both domestic abuse and harassment protection orders and allow the petitioner to choose which theory to pursue.

15. **Judgments: Pleadings: Affidavits.** At a hearing on a domestic abuse or harassment protection order, where a petitioner decides to pursue the alternative theory to the petition and affidavit filed, the court should allow a continuance where requested and leave an ex parte protection order temporarily in place.

16. **Due Process: Words and Phrases.** While the concept of due process defies precise definition, it embodies and requires fundamental fairness.

17. **Constitutional Law: Due Process.** Generally, procedural due process requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.

Appeal from the District Court for Valley County: Karin L. Noakes, Judge. Reversed and remanded with directions.

Chris A. Johnson and Joshua A. Johnson, of Conway, Pauley & Johnson, P.C., for appellant.

Michael S. Borders, of Borders Law Office, and Brandon B. Hanson, of Hanson Law Offices, for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

McCormack, J.
## NATURE OF CASE
In early 2014, Linda N., on behalf of her minor child, filed a petition for a domestic abuse protection order against the minor child's father, William N. An ex parte domestic abuse protection order was issued by the district court, and William requested a show cause hearing on the ex parte order. The evidence against William included many text messages including vulgar language and name-calling. Upon hearing, the district court upheld its domestic abuse protection order. William appeals, stating that the district court erred in considering his

conduct "abuse" under Neb. Rev. Stat. § 42-903 (Cum. Supp. 2014). Linda maintains that William's conduct should be considered abuse. She also cross-appeals, arguing that the district court should have issued a harassment protection order instead of a domestic abuse protection order.

## BACKGROUND

A petition and affidavit to obtain a domestic abuse protection order was filed against William in the district court on January 2, 2014, by Linda on behalf of her minor child. The stated rationale for such protection order was verbal abuse of the child by William in what Linda felt to be a "threat to [the minor child]." Further, Linda states that the way William spoke to the child was "very disgusting [and] disturbing." Further, "It upsets [the minor child] and is causing her a lot of stress." Following the petition and affidavit, an ex parte domestic abuse protection order was filed on January 2. William then requested a hearing on the order.

At a show cause hearing on January 21, 2014, the minor child, who was 16 years old, testified against William, and William also testified. An exhibit was received into evidence of the text messages that had been sent between the minor child and William. The text messages showed that William repeatedly texted the minor child, stating that Linda was a "drunk" or "piece of loser shit," that the minor child's boyfriend was a "fag" and "pussy," and that William was going to file charges against Linda and the minor child's boyfriend. William called the minor child "an asshole" and told her she could "kiss [his] ass." William texted the minor child: "Im ur dad u will one day regret all of ur sick rude twisted desgusting [sic] ignorant shit. I never ever harmed u or hurt u. I love u and miss u so much u ass." Many more texts were exchanged between the minor child and William in which William continued the name-calling and vulgar language. William threatened to take Linda and the minor child to court.

At the hearing, the minor child testified that the texts from William scared and intimidated her. She further testified that she felt threatened by the texts. William testified

that the arguments between the minor child and himself were provoked by the actions of the minor child's boyfriend, with whom William had argued. William testified that he did not keep track of all of the texts between the child and himself but asserts that she had sent provoking texts to him as well, including that "[he is] not her dad anymore, [he does not] belong in her life anymore, that [he is] nothing to her anymore." William stated that he was very upset about the breakdown of his relationship with his daughter and that though his messages were not justified, he felt misunderstood.

Following the show cause hearing, the district court issued an order affirming the domestic abuse protection order. William appeals the domestic abuse protection order. Linda defends the entry of the domestic abuse protection order, but also cross-appeals, arguing that the district court erred in failing to grant a harassment protection order.

## ASSIGNMENTS OF ERROR

William contends that the district court erred in affirming a domestic abuse protection order preventing him from contacting or interacting with his daughter, because his actions did not constitute "abuse" under § 42-903(1).

On cross-appeal, Linda contends that the district court erred in issuing a domestic abuse protection order instead of a harassment protection order at the show cause hearing.

## STANDARD OF REVIEW

[1] A protection order is analogous to an injunction.[1] Accordingly, the grant or denial of a protection order is reviewed de novo on the record.[2]

[2] Where the credible evidence is in conflict on a material issue of fact, an appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[3]

---

[1] *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010).

[2] *Id*.

[3] *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014).

## ANALYSIS

### Domestic Abuse Protection Order

The issue presented by William is whether, under § 42-903(1)(b), a domestic abuse protection order was properly sustained when the child received mean and crude texts from William, but had no threats made to her physical well-being. Phrased another way, the issue is whether verbal abuse via text message is enough to constitute "abuse" meriting a domestic abuse protection order.

[3] Nebraska's Protection from Domestic Abuse Act allows a victim of domestic abuse to obtain a protection order against a member of his or her household upon a showing of abuse before the district court.[4] In order to obtain such an order, the petitioner must file a petition and supporting affidavit in the district court.[5]

Abuse is defined under this act as

the occurrence of one or more of the following acts between household members:

(a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;

(b) *Placing, by means of credible threat, another person in fear of bodily injury. . .*; or

(c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318.[6]

Under the statute, "household members" include children.[7] The statute goes on to define "credible threat" as

a verbal or written threat, including a threat performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct that is made by a person with the apparent ability to carry out the threat so as to

---

[4] Neb. Rev. Stat. § 42-924 (Cum. Supp. 2014).

[5] *Id*.

[6] § 42-903(1) (emphasis supplied).

[7] § 42-903(3).

cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family. It is not necessary to prove that the person making the threat had the intent to actually carry out the threat.[8]

In 2012, this statute was amended. The definition of abuse under § 42-903(1)(b) was changed from "[p]lacing, *by physical menace*, another person in fear of imminent bodily injury"[9] to "[p]lacing, *by means of credible threat*, another person in fear of bodily injury."[10]

In *Cloeter v. Cloeter*,[11] the Nebraska Court of Appeals interpreted the prior version of § 42-903(1)(b) to include only a narrow definition of abuse. There, an ex-wife sought a domestic violence protection order against her ex-husband. The ex-wife submitted evidence that, over a series of weeks, she had received text messages from her ex-husband containing single letters that could potentially form the word "behead."[12] The ex-wife was frightened by this and took it as a threat.[13] In the same month, the ex-wife found a "2 by 4" board on her driveway that she understood as a threat from the ex-husband, because 2 years previously, the two corresponded about how a 2 by 4 could be used as a weapon.[14] The Court of Appeals determined that these alleged threats were not enough to constitute a "physical menace," nor were the alleged threats "imminent" enough to constitute abuse under § 42-903(1)(b).[15]

[4] Soon after the *Cloeter* decision, the Nebraska Legislature then amended § 42-903(1). The Legislature is deemed to be aware of existing Nebraska Supreme Court precedent when

---

[8] § 42-903(1)(b).

[9] § 42-903(1)(b) (Reissue 2008) (emphasis supplied).

[10] § 42-903(1)(b) (Cum. Supp. 2014) (emphasis supplied).

[11] *Cloeter v. Cloeter*, 17 Neb. App. 741, 770 N.W.2d 660 (2009).

[12] *Id*.

[13] *Id*.

[14] *Id*. at 744, 770 N.W.2d at 664.

[15] *Cloeter v. Cloeter, supra* note 11.

it enacts legislation.[16] The legislative history expressly states that the Legislature intended to overturn the language in the *Cloeter* decision.

[5] The legislative history of the amendment indicates that the Legislature wished to allow a "victim of abuse, law enforcement, and prosecutors to take steps toward preventing a threatened act of domestic abuse from actually becoming an act that leads to physical harm of the victim."[17] The Legislature believed the language of *Cloeter* almost made it such that a victim had to be presently assaulted in order to file a protective order.[18] At the legislative hearing, an attorney testified further to the purpose behind the amendment. He stated:

> The initial impetus for looking at a change to the language in 42-[903] was as a result of the Cloeter decision from the Court of Appeals in 2008. The court's interpretation of the word "imminent" was so restrictive that in order to qualify for a protection order, a petitioner would have to be basically getting assaulted at the time the application was being made. . . . So why the credible threat language? . . . By requiring the petitioner to show that the respondent has posed a credible threat, the judge has the authority to grant a protective order when that judge believes the petitioner has presented a credible case that they feel threatened. Just as importantly, though, that judge will also have the authority to deny a protective order when that judge does not believe the petitioner has presented such a credible case.[19]

Even given the broader "credible threat" language used in the newest version of § 42-903, there is no evidence that William expressed threats to harm the minor child. In the

---

[16] *In re Interest of Antone C. et al.*, 12 Neb. App. 466, 677 N.W.2d 190 (2004).

[17] Introducer's Statement of Intent, L.B. 310, Judiciary Committee, 102d Leg., 1st Sess. (Jan. 26, 2011).

[18] See Judiciary Committee Hearing, L.B. 310, 102d Leg., 1st Sess. (Jan. 26, 2011).

[19] *Id.* at 35-36.

more recent case of *Torres v. Morales*,[20] the trial judge specifically asked whether there had been any "physical contact or threats of any nature made by anybody." The witness answered negatively. Because there had been none, we determined that the court was proper in determining that there had been no intentional physical injury or credible threats. The "incidents" reported were intoxicated arguments and, on several incidents, yelling matches and name-calling.[21]

[6] In comparison, William's conduct through text message in this case should not be considered abuse under § 42-903(1). No evidence of intentional physical injury or physical threats can be adduced from the evidence at trial. William admittedly sent "morally abhorrent" texts to the minor child.[22] The texts contained crude language and excessive name-calling. The minor child stated that she felt threatened by these text messages. William had asserted that she was his daughter and "none of this is over until i say its over." However, nowhere in the text messages was there any reference to physical harm by William, either occurring or threatened. Neither is there any evidence of past physical abuse. We find the "credible threat" language in § 42-903 to mean that the evidence at trial must include some threat of intentional physical injury or any other physical threat.

[7] Since there was no threat of harm to the minor child, a domestic abuse protection order would not be appropriate in these circumstances. For the reasons discussed in the next section of this opinion, we cannot consider whether a harassment protection order might have been warranted. Therefore, we reverse the decision of the district court.

## HARASSMENT PROTECTION ORDER

Linda argues on cross-appeal that the district court erred in failing to consider a harassment protection order instead of a domestic abuse protection order.

---

[20] *Torres v. Morales*, *supra* note 3, 287 Neb. at 593, 843 N.W.2d at 811.

[21] *Torres v. Morales, supra* note 3.

[22] Brief for appellant at 5.

A harassment protection order is proper when a person has "engage[d] in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose."[23] A course of conduct is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of . . . telephoning, contacting, or otherwise communicating with the person."[24] The stated purpose for a harassment protection order is to "protect victims from . . . individuals who intentionally follow, detain, stalk, or harass them or impose any restraint on their personal liberty" and, particularly, to deal with stalking offenses.[25] We have defined stalking to mean "the extensive, ongoing, and escalating nature of . . . conduct" showing intent to intimidate the victim.[26]

The "form petition" for both a domestic abuse protection order and a harassment protection order are barely distinguishable.[27] As we have stated, the only differences between the two are that they have "different titles, that the abuse protection form asks for the relationship of the respondent, and that the abuse protection form asks the petitioner to list the most recent incidents of 'domestic abuse,' instead of the most recent incidents of 'harassment.'"[28] Further, between domestic abuse and harassment protection orders, we have held that a particular form is not required for the particular relief requested.[29] We held that it is proper for a lower court judge to look at the substance of the petitioner's actual request, instead of "simply the title of the petition."[30]

---

[23] Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2008).

[24] § 28-311.02(2)(b).

[25] § 28-311.02(1).

[26] *In re Interest of Jeffrey K.*, 273 Neb. 239, 244, 728 N.W.2d 606, 611 (2007).

[27] *Mahmood v. Mahmud, supra* note 1.

[28] *Id.* at 395, 778 N.W.2d at 431.

[29] *Id.*

[30] *Id.*

In *Mahmood v. Mahmud*,[31] a petition for a domestic abuse protection order was filed by an ex-wife against her ex-husband. The petition set forth in detail many events constituting harassment and describing a history of harassment. However, the petition set forth no alleged violence against the ex-wife. The lower court entered an ex parte harassment protection order instead of a domestic abuse protection order. The harassment protection order was upheld after a hearing. We affirmed, holding that the domestic abuse form petition was sufficient to put the ex-husband on notice that the ex-wife sought a harassment protection order and sought to enjoin the ex-husband from continuing to harass, threaten, telephone, communicate, or otherwise disturb the peace of the ex-wife.[32]

[8] We specifically held in *Mahmood* that a county court or district court has the statutory authority to issue a harassment protection order, where the petition was instead for a domestic abuse protection order.[33] We further held that "[w]hile Nebraska's § 28-311.09(6) provides that the standard forms shall be the only ones used, this does not mean that without the proper standard form, the court lacks authority to act."[34] A trial court has discretion, authority, and jurisdiction to issue a harassment protection order, even though the petitioner had filed a petition for a domestic abuse protection order.[35]

But the legal theory supporting a domestic abuse protection order is significantly different from the theory underlying a harassment protection order. As we have already explained, the former requires proof of "abuse" as specifically defined by the Legislature. The only definition of that term which could conceivably apply to the facts of the present case is provided by § 42-903(1)(b): "Placing, by means of credible threat, another person in fear of bodily injury." But the minor child was never asked whether, nor did she testify that, the text messages sent

---

[31] *Mahmood v. Mahud, supra* note 1.

[32] *Id.*

[33] *Id.*

[34] *Id.* at 395, 778 N.W.2d at 431.

[35] See *id.*

by William placed her in fear of bodily injury. Thus, Linda failed to prove an essential element of the statutory claim for a domestic abuse protection order.

On cross-appeal, Linda now attempts to induce this court to allow her to change legal theories at the appellate level—a request that violates several well-settled and fundamental principles. We decline to do so.

[9,10] First, an appellate court reviews a case on the theories pursued by the parties, not on a theory that the parties might have raised. This court has repeatedly stated that an appellate court is obliged to dispose of a case on the basis of the theory presented by the pleadings on which the case was tried.[36] In this case, Linda filed a petition and affidavit for a domestic abuse protection order, an ex parte domestic abuse protection order was issued, and a show cause hearing was held on the domestic abuse protection order. At no point was the district court presented with a harassment theory.

[11] Second, a party cannot complain of error which the party has invited the court to commit.[37] In this case, Linda was represented by counsel, she chose to seek a domestic abuse order, and she did not seek to change her theory at the show cause hearing. On cross-appeal, she now assigns that the district court "erred by issuing a domestic abuse protection order instead of a harassment protection order." But any error in the district court's failure to consider a harassment protection order flowed directly from Linda's decision to pursue a theory of domestic abuse and her adherence to that theory throughout the hearing. Thus, she directly invited any error on this point.

[12,13] Third, we have consistently stated that an appellate court will not consider an issue on appeal that the trial court has not decided.[38] This flows from a related principle. When an issue is raised for the first time in an appellate court, it

---

[36] See, e.g., *Robison v. Madsen*, 246 Neb. 22, 516 N.W.2d 594 (1994); *Wilson v. Misko*, 244 Neb. 526, 508 N.W.2d 238 (1993).

[37] *Moyer v. Nebraska City Airport Auth.*, 265 Neb. 201, 655 N.W.2d 855 (2003).

[38] See, e.g., *Conley v. Brazer*, 278 Neb. 508, 772 N.W.2d 545 (2009).

will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.[39] The district court did not consider the fitness of a harassment protection order. It was not asked to do so. Its determination was strictly limited to the appropriateness of a domestic abuse order. This court's review should be similarly limited.

[14,15] Although the Court of Appeals' decision in *Sherman v. Sherman*[40] authorizes a trial court to consider both a domestic abuse protection order and a harassment protection order, if the circumstances warrant, the Court of Appeals' opinion provides no support for changing theories at the appellate level. In *Sherman*, an ex parte domestic abuse order was originally entered, but *at hearing*, the judge advised the petitioner to change her petition to a harassment protection order. The Court of Appeals held:

> [W]hen presented with a situation in which an ex parte domestic abuse protection order has been entered, but at the hearing, it becomes apparent that the matter may more properly be considered as a harassment protection order, *the judge should explain the requirements for both domestic abuse and harassment protection orders and allow the petitioner to choose which theory to pursue*. If the petitioner chooses to pursue the alternative theory to the petition and affidavit filed, and the respondent objects, the court should inquire if the respondent is requesting a continuance, which should be granted, if so requested, while leaving the ex parte protection order temporarily in place.[41]

[16,17] The key to the procedure approved by the *Sherman* court is that it occurs before the trial court, requires the petitioner to make an informed choice of legal theory, and protects the due process rights of both parties by trying the case only on the theory elected by the petitioner. While the

---

[39] *Maycock v. Hoody*, 281 Neb. 767, 799 N.W.2d 322 (2011).

[40] *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010).

[41] *Id*. at 347-48, 781 N.W.2d at 620-21 (emphasis supplied).

concept of due process defies precise definition, it embodies and requires fundamental fairness.[42] Generally, procedural due process requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.[43] The *Sherman* court approved a procedure allowing a change of legal theories. The change must be initiated before the trial court makes a final decision. The procedure preserves the adversarial system. It requires a petitioner to make an informed choice regarding the theory to be pursued. It protects the respondent's due process rights by offering a continuance if the petitioner elects to change his or her theory. The *Sherman* court's procedure affords due process to both parties.

But the *Sherman* court's procedure simply does not apply where a petitioner, as informed by counsel, pursues a domestic abuse theory and the potential application of a harassment theory does not become "apparent" to either the petitioner or the trial court. Treating the harassment theory as "apparent" where it is first recognized at the appellate level would violate the fundamental principles of law we identified above. Ultimately, such a procedure would flout the respondent's right to due process and society's essential interest in the finality of judgments. Allowing Linda to have another chance at the harassment theory that she failed to pursue would be akin to allowing an injured person who successfully but erroneously pursued only an intentional tort theory to a final judgment to have another chance at recovery by shifting on appeal to a negligence theory. The case was tried on

---

[42] *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007).

[43] *Id.*

the domestic abuse theory, and she cannot now change to a harassment theory. We conclude that Linda's cross-appeal lacks merit.

### CONCLUSION

The district court incorrectly granted a domestic abuse protection order, because William's conduct did not fit within the statutory definition of "abuse" under § 42-903(1). Allowing Linda to shift to a harassment theory on appeal would violate fundamental principles of law. We reverse the judgment of the district court and remand the cause with directions to deny the requested domestic abuse protection order.

Reversed and remanded with directions.

Patricia M. Damme, appellee, v.
Pike Enterprises, Inc., appellant.

___ N.W.2d ___

Filed December 5, 2014.    No. S-14-304.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the Workers' Compensation Court's findings, an appellate court considers the evidence in the light most favorable to the successful party. The appellate court resolves every controverted fact in the successful party's favor and gives that party the benefit of every inference that is reasonably deducible from the evidence.

3. **Workers' Compensation: Appeal and Error.** The Workers' Compensation Court's factual findings have the effect of a jury verdict, and an appellate court will not disturb them unless they are clearly wrong.

4. ____: ____. An appellate court independently reviews questions of law decided by a lower court.

5. **Workers' Compensation.** Whether to recognize a nonstatutory defense in a workers' compensation case presents a question of law.