Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/21/2022 09:07 AM CST

Yerania O., appellant,
v. Juan P., appellee.
___ N.W.2d ___

Filed January 21, 2022.    No. S-21-441.

1. **Protection Orders: Judgments: Injunction: Appeal and Error.** A protection order is analogous to an injunction. Accordingly, the grant or denial of a protection order is reviewed de novo on the record. In such a de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court.
2. **Due Process: Words and Phrases.** While the concept of due process defies precise definition, it embodies and requires fundamental fairness.
3. **Constitutional Law: Due Process.** Generally, procedural due process requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.
4. **Constitutional Law: Protection Orders.** Because the intrusion on a respondent's liberty interests is relatively limited, the procedural due process afforded in a protection order hearing is likewise limited.
5. **Courts: Judgments: Statutes.** To satisfy the requirement of specific findings, the court must set forth the reasoning for its order, explaining why its conclusion is appropriate; specific findings cannot be satisfied by simply quoting the statutory language.
6. **Protection Orders: Proof.** The legal theories supporting either a sexual assault, domestic abuse, or harassment protection order are significantly different from one another, and each require different offerings of proof.

7. **Judges.** A judge must be careful not to appear to act in the dual capacity of judge and advocate.
8. **Judges: Trial.** A judge's official conduct must be free from even the appearance of impropriety, and a judge's undue interference in a trial may tend to prevent the proper presentation of the cause of action.

Appeal from the District Court for Lancaster County: Thomas E. Zimmerman, Judge. Reversed and remanded with directions.

David V. Chipman and Carlos A. Monzón, of Monzón, Guerra & Associates, for appellant.

McKynze P. Works and Gina Elliott, Senior Certified Law Student, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.
Yerania O. and Juan P. worked together in the early mornings at a grocery store in Lincoln, Nebraska, for approximately 2 years. Yerania quit this job in December 2020, and in March 2021, she sought and obtained an ex parte sexual assault protection order against Juan. Yerania's petition alleged that Juan had "[p]ester[ed]" her at work, verbally and physically, and that he had followed her when she took her children to school and threatened to kidnap Yerania and her children.

Juan requested and was granted a show cause hearing on whether the sexual assault protection order should remain in effect, at which hearing he denied Yerania's allegations and asserted that their relationship had been consensual.

After the case was submitted, the district court, sua sponte, filed Yerania's petition under a new case number, then entered a harassment protection order. The court found that it had jurisdiction and concluded a harassment protection order was

more appropriate, but did not make specific findings. Juan appealed. We moved the appeal to our docket.

We find that the procedure utilized in this case deprived Juan of sufficient notice and an opportunity to be heard, in violation of his due process rights. Accordingly, we reverse the decision of the district court and remand the cause with directions to vacate the harassment protection order.

## I. BACKGOUND

Yerania and Juan worked together at a Lincoln grocery store for approximately 2 years, until December 2020. Their shifts were generally 3 to 7 a.m., and there were typically no other employees present in the store during this time. Both parties were married to other people.

In March 2021, Yerania filed a petition and affidavit to obtain a sexual assault protection order against Juan. The petition alleged Juan had "[p]ester[ed]" Yerania at work; showed her his genitals; and touched her breasts, genitals, and buttocks "for several weekends." It also alleged Juan forcibly kissed Yerania and forced her to touch his penis while they were in a walk-in cooler. According to Yerania, Juan followed her when she took her children to school and threatened to kidnap both her and her children. Yerania alleged that she was very afraid and did not feel safe working alone with Juan.

The same day Yerania's petition was filed, the district court entered an ex parte sexual assault protection order against Juan. Approximately 2 weeks later, Juan filed a request for a hearing on the protection order. After several delays, a hearing was held on May 14, 2021.

At the hearing, Yerania testified through an interpreter. Yerania admitted that she did not understand English; that the allegations contained in the typed, English portion of her petition were "uncertified"; and that they were translated with the help of a friend. Over Juan's objection, the petition and affidavit were admitted into evidence; the court noted that the English portion of the petition is what it had relied on in entering its ex parte order due to a "language barrier."

Yerania read from her petition for much of her testimony presented at the hearing. According to Yerania, from October until December 2020, Juan began to sexually harass her during their solitary shifts. On October 25, Juan approached her from behind in the walk-in cooler and tried to kiss her while holding her arms. When she resisted, Juan pushed her and she fell to the ground, injuring her hip.

Yerania's husband testified that he was in Mexico from July 2020 until the end of November 2020. Upon returning home, he noticed that Yerania was acting differently and asked her about her behavior. According to Yerania's husband, on December 5, 2019, Yerania told him that she was being sexually harassed at work. He and Yerania then devised a plan to record the harassment. The next morning, after Yerania's husband dropped her off at work with a "digital recorder in her shirt," she also set up her phone to video record the kitchen area. According to Yerania, after Juan arrived that morning, he noticed that she was recording him. Yerania then called her husband and told him that Juan had discovered the phone recorder and reported to him that she was afraid. Yerania's husband contacted the police, who went to the grocery store. Police questioned both Yerania and Juan, and Yerania stated at that time that she did not want to file charges against Juan and that she did not want police involved. At the hearing, Yerania testified that although she had told police at that time that she felt safe retuning to work, this had been a lie and she did not feel safe at work. Yerania quit her job that same day.

Yerania and her husband both testified that they worked with police in the following months to try to collect evidence against Juan. In February, Yerania called Juan multiple times in the presence of police, but Juan did not answer. Juan then contacted police and stated that he did not want Yerania contacting him anymore "because she [was] trying to get him to say things related to this case in front of her husband." Police instructed Yerania that she should no longer contact Juan by phone. The police then notified Yerania and her husband that

there was no probable cause to arrest Juan and the investigations ceased.

In April 2021, Yerania saw Juan at a local park and called the police; Juan had left before police arrived.

After Yerania and her husband completed their testimony, Juan called Yerania's aunt, who is also her coworker, on his behalf. Yerania's aunt testified that Yerania and Juan were very close, that she always saw Yerania and Juan together, and that they seemed happy together. Yerania's aunt also testified that the two had arrived together at a family gathering in November 2020. When asked about her observations on that day, Yerania's aunt recalled that she saw Yerania and Juan sitting together and that "I saw the relationship that she seemed happy. I was happy for her. I thought that she would finally be happy with him." Yerania's aunt also testified that on December 6, after the police had finished talking to Yerania and Juan outside the store that morning, Yerania had returned to collect her things and leave. At this time, Yerania told her aunt that "she wasn't able to leave her husband." Yerania's aunt said that Juan approached them and that Yerania said, "'Don't go away.'" She further said, "'You need this job.'" Juan responded, "'You stay,'" and he said that he would go instead. Juan asked if he could hug Yerania, and she agreed. According to Yerania's aunt, Yerabia and Juan "hugged each other very strongly and it was mutual," while the aunt was in the room with them.

Other coworkers testified that they never saw Juan act inappropriately toward Yerania and that they thought the two had a "sentimental" relationship. They also testified that the two had danced together, had hugged often, and usually ate lunch together even on their days off. One coworker testified that in early November, she arrived at the store to find Yerania and Juan eating breakfast "really close together." She also reported that Yerania did not like when other female coworkers talked to Juan, that Yerania gave Juan extra attention, and that she would often arrive late for her scheduled shifts "because they didn't want me around."

Juan testified that he and Yerania were "more than just friends" and instead were "confidants"; he also testified that they would often kiss, hug, and exchange gifts, including food, socks, and flowers. Juan stated they would give each other a hug and a kiss when they arrived at work each morning, and he denied ever forcing Yerania to touch him or threatening Yerania or her family. Juan admitted that although both he and Yerania were married, the two had formed a close relationship over the years after confiding in each other about their marriage problems. Juan stated that "[a]t first it was more about work and then afterwards, it became more personal and she would talk to me about her husband and I would talk to her about my wife."

Juan also testified that on the morning of December 6, 2019, when police arrived to question them outside the grocery store, he believed Yerania was afraid of her husband. Juan testified that "[s]he was fearful for the reaction of her husband, what he was going to say, and I was also fearful because I don't know what he was going to do after finding out."

In addition to this testimony at the show cause hearing, additional statements in exhibit 3 tend to support Juan's version of events. According to the Lincoln Police Department case reports within exhibit 3, an "[Officer] Rakoczy" reported that on the morning of December 6, 2019, Yerania's husband called to report that his wife was being sexually harassed. Officers arrived at the grocery store to find Yerania's husband behind the building. Officers knocked on the back door of the store, at which time Yerania and Juan came to the door. Officer Rakoczy reported that "Yerania seemed afraid and [her husband] told her to come outside and talk several times." Officer Rakoczy reported that when Yerania stepped outside, her husband held her arm, "almost as if to prevent her from walking back inside, and had to be told to let go of her and let her answer questions for herself."

Officers then removed Yerania from the scene so that she could be questioned without her husband's being present. They

went to a nearby residence belonging to Yerania's cousin. At this time, Yerania told police that "she did not want anyone to get in trouble and did not want the police to get involved." Yerania "did not give much detail about the harassment" but "was adamant that [Juan] not get in trouble."

Officer Rakoczy spoke to Yerania's cousin next, who said that she believed Yerania was being emotionally or mentally abused by her husband, which could explain "the fearful way Yerania was acting." Yerania's cousin also said that Yerania's husband was very controlling of Yerania and that he often would not let her talk and would answer questions for her. Although Yerania's cousin stated to police that she did not know of any physical abuse, she also "would not be surprised" if physical abuse was occurring. Yerania's cousin's statements were not provided through direct testimony at the hearing; rather, they were included in the police reports admitted into evidence.

After the case was submitted, the district court, sua sponte, filed Yerania's petition under a new case number and entered and issued a harassment protection order against Juan. In the order, the court found that the facts alleged in the petition gave it jurisdiction over the parties and the subject matter, and concluded a harassment protection order was more appropriate than a sexual assault protection order. The court made no specific findings, leaving blank the portion of the protection order form which states that "[t]he court specifically finds as follows . . . ." Juan appealed, and as noted, we removed the case to our docket.

## II. ASSIGNMENTS OF ERROR

Juan assigns that the district court erred in (1) violating his due process rights by issuing a harassment protection order against him and (2) finding Yerania had met her burden of proof for the issuance of a harassment protection order.

Juan also assigns that this appeal should not be found moot if the expiration of the protection order occurs prior to this court's decision on appeal.

## III. STANDARD OF REVIEW

[1] A protection order is analogous to an injunction.[1] Accordingly, the grant or denial of a protection order is reviewed de novo on the record.[2] In such a de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court.[3]

## IV. ANALYSIS

In his first assignment of error, Juan assigns that the district court erred in violating his due process rights by issuing a harassment protection order against him. Specifically, Juan asserts that he was not provided with sufficient notice and an opportunity to be heard regarding the harassment protection order, in violation of his procedural due process rights protected by the U.S. and Nebraska Constitutions. We agree.

### 1. Due Process and Protection Orders

[2,3] While the concept of due process defies precise definition, it embodies and requires fundamental fairness.[4] Generally, procedural due process requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.[5]

---

[1] *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010).

[2] *Id.*

[3] *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018).

[4] *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007), *disapproved on other grounds, State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

[5] *Id.*

[4] When it comes to protection orders, we have recognized that because the intrusion on a respondent's liberty interests is relatively limited, the procedural due process afforded in a protection order hearing is likewise limited.[6] But while the procedures required in a protection order proceeding may not reflect the full panoply of procedures common to civil trials, we have held that due process does impose some basic requirements.[7] A brief explanation of prior opinions concerning protection orders and due process is helpful to understand the due process rights afforded to the parties in protection order proceedings.

In 2010, the Nebraska Court of Appeals considered a due process claim regarding the entry of a harassment protection order in *Sherman v. Sherman*.[8] Susan Sherman filed a petition and affidavit to obtain a domestic abuse protection order against her ex-husband, Scott Sherman, under Neb. Rev. Stat. § 42-924 (Reissue 2008). The lower court issued an ex parte order against Scott that same day. Scott requested a hearing. At that hearing, Scott moved to dismiss the ex parte domestic abuse protection order; in response, the court sua sponte requested the bailiff to retrieve a harassment protection order and stated that Susan "'want[ed] to amend it to that.'"[9] The court later entered a harassment protection order pursuant to Neb. Rev. Stat. § 28-311.09 (Reissue 2008) against Scott for a period of 1 year.

On appeal, the Court of Appeals found that Scott had not properly preserved the due process issue for appellate review, but noted that the lower court had indeed crossed the line into advocacy because it had made the determination of which theory to pursue, rather than allowing Susan to make that choice herself. The court then laid out instructions for how a

---

[6] See *Mahmood v. Mahmud, supra* note 1.

[7] *Id.*

[8] *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010).

[9] *Id.* at 344, 781 N.W.2d at 619.

court should act under these circumstances so that the rights of both parties could be protected without the court's acting as an advocate for either side, stating:

> In order to prevent crossing the line into advocacy for a pro se litigant, when presented with a situation in which an ex parte domestic abuse protection order has been entered, but at the hearing, it becomes apparent that the matter may more properly be considered as a harassment protection order, the judge should explain the requirements for both domestic abuse and harassment protection orders and allow the petitioner to choose which theory to pursue. If the petitioner chooses to pursue the alternative theory to the petition and affidavit filed, and the respondent objects, the court should inquire if the respondent is requesting a continuance, which should be granted, if so requested, while leaving the ex parte protection order temporarily in place. Following this procedure ensures that a judge does not cross the line from judge to advocate in assisting the pro se litigant while at the same time protecting the rights of the opposing party.[10]

In a later case, *Linda N. v. William N.*,[11] this court considered a due process claim regarding a domestic abuse protection order. The mother, Linda N., had requested a protection order on behalf of her minor daughter, seeking protection against the daughter's father, William N. An ex parte domestic abuse protection order was issued by the district court, and William requested a show cause hearing on the ex parte order, which was upheld by the district court after the show cause hearing.

William appealed, stating that the district court erred in considering his conduct "abuse" for purposes of Neb. Rev. Stat. § 42-903 (Cum. Supp. 2014). Linda cross-appealed, arguing that a harassment protection order should be entered if the evidence did not sustain the domestic abuse protection order entered by the trial court.

---

[10] *Id.* at 347-48, 781 N.W.2d at 620-21.

[11] *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014).

On appeal, this court held that William's conduct did not constitute abuse and reversed the decision of the district court. In consideration of Linda's cross-appeal, we stated that a trial court has discretion, authority, and jurisdiction to issue a harassment protection order, even though the petitioner had filed a petition for a domestic abuse protection order, but the legal theory supporting a domestic abuse protection order is significantly different from the theory underlying a harassment protection order.[12] Thus, it was improper for Linda to attempt to induce this court to change legal theories at the appellate level.

We went on to distinguish *Sherman*, stating that the procedure it laid out which allowed for a change of legal theories was proper in that it occurs before the trial court makes a final decision, requires the petitioner to make an informed choice of legal theory, and protects the due process rights of both parties by trying the case only on the theory elected by the petitioner and by offering a continuance if the petitioner does elect to change his or her theory.[13] Such procedure, however, was inapplicable "where a petitioner, as informed by counsel, pursues a domestic abuse theory and the potential application of a harassment theory does not become 'apparent' to either the petitioner or the trial court."[14] Accordingly, Linda's cross-appeal was without merit.

Most recently, this court again considered due process as it related to protection orders in a 2019 case, *D.W. v. A.G.*[15] In *D.W.*, a woman petitioned the court for a sexual assault protection order based on her allegations that the respondent, A.G., had subjected her to sexual intercourse when she was incapacitated. D.W. further alleged that A.G. had violated contact restrictions imposed by the university they both

---

[12] *Id.*

[13] *Id.*

[14] *Id.* at 619, 856 N.W.2d at 446.

[15] *D.W. v. A.G.*, 303 Neb. 42, 926 N.W.2d 651 (2019).

attended, "'interfering with [her] educational experience.'"[16] An ex parte sexual assault protection order was entered against A.G., who then requested a show cause hearing on whether the sexual assault protection order should remain in place.

After the close of evidence at the hearing, the trial court stated that the sexual assault protection order would not remain in effect, but that it would "enter a protection order."[17] The trial court subsequently dismissed the sexual assault protection order and, after sua sponte filing D.W.'s petition and affidavit under a new case number, entered a harassment protection order in that case.

On appeal, we held that the respondent, A.G., was not provided with sufficient notice and an opportunity to be heard and that the entry of the harassment protection order had violated A.G.'s right to procedural due process. In our analysis, we discussed and distinguished both *Linda N.* and *Sherman*. We stated: "Inherent in both *Linda N.* and *Sherman* is a recognition that a respondent in a protection order proceeding must be notified of the grounds upon which a protection order is sought and provided with an opportunity to respond to those grounds at the show cause hearing."[18]

In accordance with reasoning supplied by the *Linda N.* and *Sherman* opinions, we found that A.G. was not provided with sufficient notice and an opportunity to be heard regarding a harassment protection order. The original petition, ex parte order, and show cause hearing had all either alleged a sexual assault or focused on whether the sexual assault protection order entered against A.G. should remain in place. D.W. did not request a harassment protection order or make allegations sufficient to give notice that she sought such an order, and no evidence could be identified at the show cause hearing that tended to show A.G. harassed D.W.

---

[16] *Id.* at 44, 926 N.W.2d at 654.

[17] *Id.* at 43, 926 N.W.2d at 654.

[18] *Id.* at 50, 926 N.W.2d at 657.

After again noting the issues of advocacy by the court, as previously discussed in *Sherman*, this court explained that the procedure had been insufficient where A.G. had "requested a show cause hearing as to whether a sexual assault protection order should *remain in effect*."[19] It was not until after the close of evidence that the trial court "brought up the harassment protection order on its own initiative."[20] We found that by the time A.G. was aware that the court was considering a harassment protection order in place of a sexual assault protection order, A.G. no longer had the opportunity to present a case that such an order was not warranted.

Further, we discussed how the procedure followed by the lower court was not meaningfully different from that of *Linda N.*, a procedure which we found to be inconsistent with due process. We noted, again:

> Whether a new theory for a protection order is asserted for the first time on appeal or after the close of evidence at the show cause hearing, the respondent does not have an opportunity to defend against the entry of the protection order on the new theory and is denied procedural due process.[21]

Because the entry of a harassment protection order did not comply with procedural due process, we reversed entry of the harassment protection order and remanded the cause with directions to vacate it.[22]

## 2. Neb. Rev. Stat. § 28-311.11 (Supp. 2019)

After *D.W.* was decided, the Legislature amended Neb. Rev. Stat. § 28-311.11 (Supp. 2019) on May 30, 2019, and Yerania asserts that *D.W.* therefore does not control this case as it was decided prior to these amendments. Conversely, Juan

---

[19] *Id.* at 51, 926 N.W.2d at 658 (emphasis supplied).

[20] *Id.*

[21] *Id.* at 51-52, 926 N.W.2d at 658.

[22] *D.W. v. A.G., supra* note 15.

argues that the amendments to § 28-311.11 "[do] not relieve a trial court from giving the respondent notice that it is considering a harassment protection order . . . in lieu of the sexual assault protection order and an opportunity to defend against such new theory."[23]

We agree with Juan. Simply because the statute has been amended does not mean that Juan's rights were not violated under the amended statute, and such amendment does not render our prior opinion inapplicable where the process utilized was deficient for similar reasons.

(a) Insufficient Notice

In this case, the facts mirror those in *D.W.*[24] Yerania submitted a petition and affidavit seeking a sexual assault protection order, which was granted ex parte by the district court. The ex parte sexual assault protection order served upon Juan informed him that "[i]f [he] wishes to appear and show cause why this order should not *remain in effect* or be renewed for a period of one year," he could submit a request for hearing. (Emphasis supplied.)

Included with the ex parte protection order was a form entitled "Protection Order Information - Sexual Assault." Under the heading "Notice to Respondent," this form stated:

> If there has been an **Ex Parte** Protection Order served upon you and you wish to request a hearing to show cause *why the order should not remain in effect*, you must request a hearing on the provided "Request for Hearing" form . . . .
>
> If there is a hearing scheduled [and] if you fail to appear, a final order may be entered against you *for the relief requested in the petition*.

(Emphasis supplied.) While the form elsewhere briefly mentioned that the court may on its own motion or at the request

---

[23] Reply brief for appellant at 1.

[24] See *D.W. v. A.G., supra* note 15.

of the petitioner treat a petition for a sexual assault protection order as a request for a domestic abuse protection order or harassment protection order, fulfilling the requirements of the amended § 28-311.11, it did not make clear to Juan that such action was applicable where an ex parte protection order had already been entered against him. Instead, the forms served upon Juan seemed to indicate that such action was applicable only if the judge had set the petition for hearing to allow the parties to present evidence *prior* to issuing an order. As a result, this notice did not reasonably inform Juan of the subject and issues involved in the proceeding.

#### (b) Insufficient Opportunity to Be Heard

Based on the language of the protection order with which he was served, Juan requested a show cause hearing to "show cause why this order should not remain in effect or be renewed for a period of one year." At the show cause hearing, testimony and evidence of both parties addressed only whether a sexual assault or sexual harassment had occurred. There was no discussion regarding harassment or domestic abuse protection orders and no indication that an alternate order would be entered; rather, the sole focus was whether the ex parte sexual assault protection order should be continued based on the evidence presented.

It was not until after the close of evidence that the trial court sua sponte refiled the petition under a new case number and entered a harassment protection order. Much like the respondent in *D.W.*,[25] by the time Juan learned that a harassment protection order was under consideration by the court, he no longer had the opportunity to present a case that such an order was not warranted. This deprived Juan of any meaningful opportunity to defend himself or be heard on the issue of harassment.

---

[25] See *id.*

### (c) Fundamental Fairness and
### Advocacy by Court

Yerania has suggested that the language of § 28-311.11 sufficiently made clear the court may issue a harassment protection order rather than a sexual assault protection order if such is deemed appropriate based on the facts in the petition, affidavit, and evidence presented at a show cause hearing and that thus, Juan's rights were not violated because he was given a show cause hearing on the matter. But even if Juan had himself understood that § 28-311.11, as amended, granted the court authority to consider a different form of protection order as the result of evidence provided at the show cause hearing, after such hearing had concluded, and even when an ex parte order had already been entered, his due process rights would still have been violated.

[5] With its amendments, § 28-311.11(8) grants the court authority to consider an alternative protection order, even after the show cause hearing has concluded and without a request by the petitioner, as long as it makes specific findings. To satisfy the requirement of specific findings, the court must set forth the reasoning for its order, explaining why its conclusion is appropriate; specific findings cannot be satisfied by simply quoting the statutory language.[26] Here, the district court did not make specific findings: Within the harassment protection order entered against Juan, it included a statement of general findings, i.e., that it had jurisdiction of the parties and the subject matter and that "a Harassment Protection Order is more appropriate," but left blank the portion of the form in which the court is apparently meant to enter its specific findings. Such failure to make specific findings, on its own, is already enough to warrant a reversal of the protection order entered against Juan.

---

[26] See, *Castellar Partners v. AMP Limited*, 291 Neb. 163, 864 N.W.2d 391 (2015); *Cerny v. Todco Barricade Co.*, 273 Neb. 800, 733 N.W.2d 877 (2007).

However, even where trial courts have made such specific findings, they should be attentive to potential issues of due process.

[6] First, we have previously stated that the legal theories supporting either a sexual assault, domestic abuse, or harassment protection order are significantly different from one another and each require different offerings of proof.[27] For example, a domestic abuse protection order requires proof of abuse between family or household members.[28] A harassment protection order requires proof that the petitioner was seriously terrified, threatened, or intimidated, for no legitimate purpose, as a result of a knowing and willful course of conduct by the respondent.[29] And a sexual assault protection order requires proof that the petitioner was subjected to sexual contact or penetration by the respondent without consent.[30]

Despite the different offerings of proof required to support entry of any of these types of protection orders, the court, per the amended statute, is allowed to sua sponte change theories after the close of evidence and at a time when the defendant is no longer able to respond or present a defense regarding the newly selected theory, as long as it gives a good reason on the record.[31] Accordingly, the only way that a respondent in this situation could adequately prepare his or her defense is to prepare to defend against *all possible theories* that may be raised at a show cause hearing. To uphold our longstanding principles of due process, which embody and require a fundamental fairness to all parties,[32] courts should ensure, prior to

---

[27] See *Linda N. v. William N., supra* note 11.

[28] See §§ 42-903(1) and 42-924 (Cum. Supp. 2020).

[29] See Neb. Rev. Stat. §§ 28-311.02 (Reissue 2016) and 28-311.09(1) (Cum. Supp. 2020).

[30] See § 28-311.11(1) and (14) (Cum. Supp. 2020).

[31] See § 28-311.11 (Supp. 2019).

[32] *D.W. v. A.G., supra* note 15. Accord *In re Interest of Spencer O.*, 277 Neb. 776, 765 N.W.2d 443 (2009).

foreclosing a party's opportunity to be heard, that the party has been notified of the ultimate theory and has had a fair opportunity to address it.

[7,8] Courts should also be attentive to another fundamental principle of due process: a hearing before an impartial decisionmaker.[33] For this reason, we have repeatedly held that a judge must be careful not to appear to act in the dual capacity of judge and advocate.[34] A judge's official conduct must be free from even the appearance of impropriety, and a judge's undue interference in a trial may tend to prevent the proper presentation of the cause of action.[35]

In *Sherman*, the Court of Appeals noted that the judge's actions had crossed the line into advocacy when it made the determination of which theory to pursue.[36] To avoid advocacy, the *Sherman* court suggested that the judge in such situation should explain the requirements for the different types of protection orders and allow the petitioner to choose which theory to pursue. In *Linda N.*, we approved of *Sherman's* suggested procedure, noting that it "preserves the adversarial system" and protects the rights of both parties by requiring a petitioner to make an informed choice regarding the theory to be pursued while also granting a continuance to the respondent if an alternate theory is selected.[37]

In *Torres v. Morales*,[38] we held that the trial court judge had not acted as an advocate when it merely informed a party of the legal consequences of a protection order but did not direct the party's decision. But in *D.W.*, we noted that the court's decision to enter a harassment protection order in lieu of a

---

[33] See *Zahl v. Zahl, supra* note 4.

[34] *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014).

[35] *In re Interest of Michael N.*, 302 Neb. 652, 925 N.W.2d 51 (2019).

[36] *Sherman v. Sherman, supra* note 8.

[37] *Linda N. v. William N., supra* note 11, 289 Neb. at 619, 856 N.W.2d at 446.

[38] *Torres v. Morales, supra* note 34.

sexual assault protection order "on its own initiative" raised questions as to the source of the harassment protection order theory, stating:

> The trial court appears to have correctly sensed that there was something standing in the way of its entering a harassment protection order in the case filed by D.W. We can discern no other reason why the trial court would take the puzzling step of sua sponte refiling D.W.'s initial petition under a new case number and then entering the harassment protection order in that case.[39]

There is a danger that by sua sponte selecting an alternate theory and form of protection order by making specific findings, but without a request by the petitioner, a court may erroneously act as an advocate for the petitioner.

Simply put, the amendments made to § 28-311.11 in 2019 and since that time do not relieve courts of their duty to ensure the due process described by this court in *D.W.* and *Linda N.* and by the Court of Appeals in *Sherman*.

To avoid future due process violations, courts faced with similar circumstances should continue to utilize the procedure as laid out by *Sherman*: When presented with a situation in which an ex parte protection order has been entered, but at the hearing, it becomes apparent that the matter may more properly be considered as a different type of protection order than the type previously entered ex parte, the judge should explain the requirements for each type of protection order and allow the petitioner to choose which theory to pursue. If the petitioner chooses to pursue an alternative theory to the petition and affidavit filed, and the respondent objects, the court should inquire if the respondent is requesting a continuance, which should be granted if so requested, while leaving the ex parte protection order temporarily in place.

Here, Juan was not provided with sufficient notice informing him of the court's authority to consider a harassment

---

[39] *D.W. v. A.G., supra* note 15, 303 Neb. at 51, 52, 926 N.W.2d at 658.

protection order in lieu of the ex parte sexual assault protection order previously entered against him. After such order was under consideration by the court, Juan no longer had a meaningful opportunity to respond to or be heard on the issue of harassment.

Accordingly, we find that the procedure utilized in this case deprived Juan of sufficient notice and an opportunity to be heard in violation of his due process rights. For these reasons, we reverse the decision of the district court and remand the cause with directions to vacate the harassment protection order.

Having remanded the cause with directions to vacate the order, we need not consider Juan's other assignments of error.

## V. CONCLUSION

Juan was not provided with sufficient notice informing him of the court's authority to consider a harassment protection order in lieu of the ex parte sexual assault protection order previously entered against him. By the time Juan was informed that a harassment protection order was under consideration by the court, he no longer had a meaningful opportunity to respond to or be heard on the issue of harassment. The procedure utilized against Juan did not afford him fundamental fairness, and it additionally violated his right to an impartial decisionmaker. For these reasons, we reverse the decision of the district court and remand the cause with directions to vacate the harassment protection order.

REVERSED AND REMANDED WITH DIRECTIONS.