Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/26/2019 09:07 AM CDT

D.W., appellee and cross-appellant,
v. A.G., appellant and
cross-appellee.

___ N.W.2d ___

Filed May 3, 2019.    Nos. S-18-657, S-18-658.

1. **Judgments: Injunction: Appeal and Error.** A protection order is anal-
   ogous to an injunction. Accordingly, the grant or denial of a protection
   order is reviewed de novo on the record.
2. **Evidence: Appeal and Error.** Where the credible evidence is in conflict
   on a material issue of fact, the appellate court considers and may give
   weight to the circumstances that the trial judge heard and observed the
   witnesses and accepted one version of the facts rather than another.
3. **Jurisdiction: Appeal and Error.** Subject matter jurisdiction is a ques-
   tion of law for the court, which requires an appellate court to reach a
   conclusion independent of the lower court's decision.
4. **Jurisdiction: Words and Phrases.** Subject matter jurisdiction is the
   power of a tribunal to hear and determine a case in the general class or
   category to which the proceedings in question belong and to deal with
   the general subject matter involved.
5. **Due Process: Words and Phrases.** While the concept of due process
   defies precise definition, it embodies and requires fundamental fairness.
6. **Constitutional Law: Due Process.** Generally, procedural due process
   requires parties whose rights are to be affected by a proceeding to be
   given timely notice, which is reasonably calculated to inform the person
   concerning the subject and issues involved in the proceeding; a reason-
   able opportunity to refute or defend against a charge or accusation; a
   reasonable opportunity to confront and cross-examine adverse witnesses
   and present evidence on the charge or accusation; representation by
   counsel, when such representation is required by constitution or statute;
   and a hearing before an impartial decisionmaker.
7. **Rules of the Supreme Court: Appeal and Error.** Where a party's brief
   fails to comply with Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2014), an

appellate court may proceed as though the party failed to file a brief or, alternatively, examine the proceedings for plain error.

8. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

Appeals from the District Court for Douglas County: DARRYL R. LOWE, County Judge. Judgment in No. S-18-657 reversed, and cause remanded with directions. Judgment in No. S-18-658 affirmed in part, and in part reversed.

Benjamin M. Belmont and Wm. Oliver Jenkins, of Brodkey, Peebles, Belmont & Line, L.L.P., for appellant.

Joseph P. Naatz, of Kreikemeier Law, L.L.C., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

PAPIK, J.

Based on an allegation that A.G. sexually assaulted her, D.W. sought and obtained an ex parte sexual assault protection order against him. A.G. requested a show cause hearing on whether the sexual assault protection order should remain in effect, at which he denied D.W.'s allegations. After the close of evidence at the hearing, the trial court stated that the sexual assault protection order would not remain in effect, but that it would enter a protection order. The trial court subsequently dismissed the sexual assault protection order and, after sua sponte filing D.W.'s original petition and affidavit under a new case number, entered a harassment protection order in that case.

A.G. appeals the entry of the harassment protection order, and D.W. cross-appeals the order dismissing the sexual assault protection order. We find no basis to reverse the dismissal of the sexual assault protection order, but find that the entry of the harassment protection order violated A.G.'s right to procedural due process. Accordingly, we affirm in part, and in part

reverse and remand with directions to vacate the harassment protection order.

## BACKGROUND

*D.W.'s Initial Petition.*

D.W. commenced this action by filing a petition and affidavit to obtain a sexual assault protection order against A.G. under Neb. Rev. Stat. § 28-311.11 (Cum. Supp. 2018). According to D.W.'s affidavit, on the night of October 18, 2017, after she spent an evening drinking with friends and acquaintances, including A.G., he had sexual intercourse with her when she was "incapacitated and not able to give consent." She alleged that A.G. made sexual advances toward her at a bar and that after leaving the bar, he went with D.W. to her apartment and continued to make advances. She stated that she went to her bed, intending to go to sleep, but that her next memory was of being sexually penetrated by A.G.

D.W. further alleged that since the incident, A.G. had violated contact restrictions imposed by the university where they both attended and that his presence on campus was "interfering with [her] educational experience." D.W. stated that A.G. had not shown "consideration for [her] feelings or what he did to [her]." She said she was "in fear that he will continue to harass [her] by his actions."

The matter was assigned to a county court judge, pursuant to § 28-311.11(3) and Neb. Rev. Stat. § 25-2740(2) (Cum. Supp. 2018).

*Ex Parte Sexual Assault Protection Order.*

After D.W. filed her petition and affidavit, the trial court issued an ex parte sexual assault protection order. It enjoined A.G. from imposing any restraint on D.W.'s person or liberty; harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of D.W.; and having any contact or communication with D.W.

A.G. requested a show cause hearing on the matter.

*Show Cause Hearing.*

The trial court conducted a show cause hearing at which both D.W. and A.G. presented evidence and argument. The evidence consisted of testimony and photographs. D.W.'s petition and affidavit were not offered into evidence.

According to the evidence introduced at the show cause hearing, the events at issue occurred in the early morning hours of October 19, 2017. At that time, D.W. was an undergraduate student. D.W. testified that the day before was her 21st birthday and that she engaged in extensive drinking over the course of that day. She consumed several bottles of a malt beverage that afternoon and continued to drink when several friends and acquaintances, including A.G., came over to her apartment that evening. The group later went to and returned from a restaurant. D.W. and others in the group continued to drink at both locations.

Eventually, some members of the group, including both D.W. and A.G., went to a bar. D.W. testified that while at the bar, she engaged in "mutual flirtation" with A.G. and others, but that, after a certain point, she had no further memories of the time at the bar. She testified that her next memory after being at the bar was of having sexual intercourse with A.G. at her apartment. She testified that she did not recall consenting to the sexual intercourse.

A.G. testified that D.W. was aggressively flirting with him at the bar. He testified that while riding from the bar, D.W. was holding his hand, and that when they arrived at her apartment, she invited him to her room. He testified that D.W. appeared coherent when she invited him in. A.G. also testified that as they were walking to D.W.'s room, she told him that if he wanted to "'hook up,'" which he assumed to mean sex, he had to promise not to tell her boyfriend.

As D.W. and A.G. approached D.W.'s apartment, they encountered an acquaintance. Surveillance photographs introduced into evidence capture D.W. and A.G. talking to this acquaintance, who testified that during his brief interaction

with D.W. and A.G., D.W. appeared coherent and steady on her feet and was not slurring her words. He acknowledged that he could tell that D.W. and A.G. had been drinking, but that they appeared happy and that he did not suspect anything was wrong or out of the ordinary. The acquaintance testified that D.W. did not seem tired, exhausted, or almost ready to pass out.

A.G. testified that he and D.W. began kissing and touching each other as soon as they entered her apartment. He testified that D.W. then invited him into her bedroom and that they "had sex."

A.G. testified that during the entire evening, D.W. never appeared incoherent and she did not stumble or fall down. He testified that he never had any reason to believe D.W. was unable to give consent.

*Trial Court's Rulings.*

After the close of evidence at the show cause hearing, the trial court stated that it would not leave the sexual assault protection order in place. It explained that it could not find that there was a lack of consent. The trial court also focused on the acquaintance's testimony and noted that it found him to be the most credible of all the witnesses. The trial court described his testimony that D.W. did not appear to be incoherent or unsteady prior to entering her apartment with A.G. as the "key element."

But while the trial court made clear it would not leave the sexual assault protection order in place, it said it would enter a protection order. The trial court made some references to D.W.'s fear of A.G., but did not specify what type of protection order it planned to enter.

Two days after the show cause hearing, D.W.'s initial petition and affidavit for a sexual assault protection order were refiled under a new case number. Although not reflected in the record on appeal, the parties agree that the trial court refiled the petition and affidavit under a new case number sua sponte.

On the same day, June 8, 2018, the trial court issued a harassment protection order in the newly filed case. That order stated that the parties had been present at a hearing with counsel and that the court found a harassment protection order should be issued. It imposed the same restrictions as the previous ex parte sexual assault protection order.

Three days later, on June 11, 2018, the trial court entered an order in the original case, dismissing the sexual assault protection order because it was not supported by sufficient evidence. The order stated that sufficient evidence was adduced to merit a harassment protection order.

A.G. appealed both the harassment protection order in the newly filed case and the order finding that sufficient evidence was adduced to merit a harassment protection order in the original case. D.W. cross-appealed.

## ASSIGNMENTS OF ERROR

With regard to the entry of the harassment protection order, A.G. assigns the following errors: (1) the trial court lacked subject matter jurisdiction to enter it, (2) it was entered in violation of his right to procedural due process, (3) it was not supported by the evidence, and (4) the trial court improperly acted as an advocate in entering it.

D.W. filed a cross-appeal, but her brief does not include a separate section assigning error.

## STANDARD OF REVIEW

[1,2] A protection order is analogous to an injunction. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Id.* In such a de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and

accepted one version of the facts rather than another. *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018).

[3] Subject matter jurisdiction is a question of law for the court, which requires an appellate court to reach a conclusion independent of the lower court's decision. *Mahmood v. Mahmud, supra*.

## ANALYSIS

*Subject Matter Jurisdiction.*

We begin, as we must, with A.G.'s argument that the trial court did not have subject matter jurisdiction to enter the harassment protection order. He argues that the trial court did not have jurisdiction to enter a harassment protection order because D.W. did not seek one.

[4] While we find that the trial court's entry of a harassment protection order is problematic for reasons discussed in greater detail below, we do not believe the trial court lacked subject matter jurisdiction to enter it. Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. *Village at North Platte v. Lincoln Cty. Bd. of Equal.*, 292 Neb. 533, 873 N.W.2d 201 (2016). Because the trial court had the authority to hear and determine cases regarding harassment protection orders, the court did not lack subject matter jurisdiction to enter the harassment protection order. See Neb. Rev. Stat. § 28-311.09 (Reissue 2016).

*Procedural Due Process.*

In addition to arguing that the trial court lacked jurisdiction, A.G. argues that for several reasons, the entry of the harassment protection order was erroneous. We now turn to those arguments, beginning with his claim that the trial court violated his right to due process when it entered the harassment protection order. Here, we agree with A.G.

[5,6] While the concept of due process defies precise definition, it embodies and requires fundamental fairness. *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007). Generally, procedural due process requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker. *Id.*

When it comes to protection orders, we have recognized that because the intrusion on the respondent's liberty interests is relatively limited, "the procedural due process afforded in a harassment protection hearing is likewise limited." *Mahmood v. Mahmud*, 279 Neb. 390, 397, 778 N.W.2d 426, 432 (2010). But while the procedures required in a harassment protection order proceeding may not "reflect the full panoply of procedures common to civil trials," we have held that due process does impose some basic requirements. *Id.* at 398, 778 N.W.2d at 433. For example, we have held that testimony at a show cause hearing in a protection order proceeding must be under oath and documents must be admitted into evidence before being considered. See *id.*

We further discussed procedural due process requirements in protection order proceedings in *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014). In that case, we reversed the entry of a domestic abuse protection order upon the respondent's appeal. The petitioner also filed a cross-appeal and argued, for the first time on appeal, that a harassment protection order was warranted. We rejected the petitioner's argument for a number of reasons. In doing so, we discussed and distinguished *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010), a Nebraska Court of Appeals decision.

In *Sherman*, the court held that when a trial court is presented with a case in which a petitioner seeks a domestic abuse protection order but the evidence would only support a harassment protection order, the judge should explain the requirements for both types of protection orders, allow the petitioner to choose which theory to pursue, and, grant the respondent a continuance, if requested. We explained in *Linda N.* that the procedure outlined in *Sherman* allowed a petitioner to elect to change theories, but that "[t]he change must be initiated before the trial court makes a final decision." *Linda N.*, 289 Neb. at 619, 856 N.W.2d at 446. We further observed that the procedure outlined in *Sherman* protected the due process rights of both parties "by trying the case only on the theory elected by the petitioner." *Linda N.*, 289 Neb. at 618, 856 N.W.2d at 446. Conversely, we said that to allow a petitioner to change the theory on which a protection order was sought on appeal would violate due process.

Inherent in both *Linda N.* and *Sherman* is a recognition that a respondent in a protection order proceeding must be notified of the grounds upon which a protection order is sought and provided with an opportunity to respond to those grounds at the show cause hearing. This should come as no surprise. Notice and an opportunity to be heard are, after all, basic requirements of procedural due process. See, e.g., *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("[t]he essential requirements of due process . . . are notice and an opportunity to respond"); *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972) ("[f]or more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified'") (quoting *Baldwin v. Hale*, 68 U.S. (1 Wall.) 223, 17 L. Ed. 531 (1863)).

In this case, we conclude that A.G. was not provided with sufficient notice and an opportunity to be heard regarding a

harassment protection order. D.W.'s initial petition sought a sexual assault protection order. She submitted a form petition for a sexual assault protection order, which asked her to list the date, time, and a description of the alleged sexual assault. On a page attached to the petition, D.W. alleged that A.G. sexually assaulted her. The trial court thereafter entered an ex parte sexual assault protection order. A.G. requested a show cause hearing on whether the sexual assault protection order should remain in place. At that hearing, both parties focused on whether a sexual assault had occurred. At no time did D.W. request that a harassment protection order be entered or make allegations sufficient to give A.G. fair notice that she sought such an order. And at oral argument, D.W.'s counsel could not identify any evidence introduced at the show cause hearing that tended to show that A.G. harassed D.W.

Despite all this, the trial court apparently saw some basis for a harassment protection order. That the trial court seems to have brought up the harassment protection order on its own initiative raises questions of its own. See *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010) (holding that by electing which theory to pursue, rather than allowing petitioner to make choice, trial judge crossed line into advocacy). But even if the source of the harassment protection order theory is set to the side, the late hour at which the theory was raised—after the close of evidence—presents a procedural due process problem. A.G. requested a show cause hearing as to whether a sexual assault protection order should remain in effect. By the time that A.G. learned that a harassment protection order was under consideration, he no longer had the opportunity to present a case to the trial court that such an order was not warranted.

In this respect, the procedure followed in this case is not meaningfully different from the procedure we found to be inconsistent with procedural due process in *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014). Whether a new theory for a protection order is asserted for the first time on

appeal or after the close of evidence at the show cause hearing, the respondent does not have an opportunity to defend against the entry of the protection order on the new theory and is denied procedural due process.

The trial court appears to have correctly sensed that there was something standing in the way of its entering a harassment protection order in the case filed by D.W. We can discern no other reason why the trial court would take the puzzling step of sua sponte refiling D.W.'s initial petition under a new case number and then entering the harassment protection order in that case. The trial court's sua sponte refiling of D.W.'s petition in a new case was hardly capable, however, of remedying the due process problem outlined above.

Because the entry of the harassment protection order did not comply with procedural due process, we reverse it, and remand the cause with directions to vacate it. Because we reverse the harassment protection order on these grounds, we decline to consider A.G.'s remaining assignments of error.

*D.W.'s Cross-Appeal.*

[7,8] As noted above, D.W.'s brief in support of her cross-appeal does not include a separate section assigning error. It does include a heading in the argument section of her brief stating: "The trial court erred in dismissing the sexual assault protection order agai[ns]t the appellant." Brief for appellee on cross-appeal at 20. We have held, however, that headings in the argument section of a brief do not satisfy the requirements of Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2014). See, e.g., *In re Interest of Samantha L. & Jasmine L.*, 286 Neb. 778, 839 N.W.2d 265 (2013). Where a party's brief fails to comply with § 2-109(D)(1), we may proceed as though the party failed to file a brief or, alternatively, examine the proceedings for plain error. See *Estate of Schluntz v. Lower Republican NRD*, 300 Neb. 582, 915 N.W.2d 427 (2018). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in

damage to the integrity, reputation, or fairness of the judicial process. *Id.*

Despite D.W.'s failure to assign error in the manner contemplated by our rules, the basis for her cross-appeal can be discerned: She contends that the trial court erred by dismissing the sexual assault protection order against A.G. For reasons we will explain, we cannot say that the trial court plainly erred when it dismissed the sexual assault protection order.

Courts may grant sexual assault protection orders to victims of sexual assault offenses. § 28-311.11(1). The relevant statute defines sexual assault offenses by referencing various other statutes. Section 28-311.11 provides:

>     (12) For purposes of this section, sexual assault offense means:
>
>     (a) Conduct amounting to sexual assault under section 28-319 or 28-320 or sexual assault of a child under section 28-319.01 or 28-320.01 or an attempt to commit any of such offenses; or
>
>     (b) Subjecting or attempting to subject another person to sexual contact or sexual penetration without his or her consent, as such terms are defined in section 28-318.

Neb. Rev. Stat. § 28-319(1) (Reissue 2016) states that first degree sexual assault occurs when any person subjects another person to sexual penetration either without consent of the victim or when the person knew or should have known that "the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct" (or under other circumstances not relevant here).

D.W. contends that the evidence showed either that she was subjected to sexual penetration without consent or that she was mentally or physically incapable of resisting or appraising the nature of her conduct. While A.G. admitted that he engaged in sexual activity with D.W., he maintained that all such activity was consensual and that D.W. appeared physically and mentally capable of providing consent.

The evidence at the show cause hearing on whether consent was provided and whether D.W. was capable of providing consent was, at a minimum, disputed. D.W. admitted to mutual flirtation between herself and A.G. at the bar, but testified that her next memory was of being sexually penetrated by A.G. in her apartment. She testified that she did not recall consenting to sexual intercourse with him. A.G. testified that D.W. was not incoherent or stumbling when they returned to her apartment; that she told him that if they "'hook[ed] up,'" he had to promise not to tell her boyfriend; and that D.W. was a willing participant in the sexual activity. In addition, the acquaintance testified that just prior to entering her apartment, D.W. did not seem tired, exhausted, or almost ready to pass out.

After hearing all of this evidence, the trial court explained its decision not to enter a sexual assault protection order. It stated that it could not find a lack of consent. It also noted that it found the acquaintance to be credible and described his testimony regarding D.W.'s condition just prior to entering her apartment as the "key element." Because the evidence on whether a sexual assault occurred was, at the very least, conflicting and required the trial court to make credibility determinations of witnesses, we cannot say that the trial judge committed plain error by vacating the sexual assault protection order. See *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 678, 919 N.W.2d 841, 846 (2018) ("where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another").

## CONCLUSION

We find that the trial court violated A.G.'s right to procedural due process by entering a harassment protection order without providing sufficient notice and an opportunity to be heard. We therefore reverse the June 8, 2018, order that

issued the harassment protection order, as well as the June 11 order to the extent that it found evidence sufficient to merit a harassment protection order. We remand the cause with directions to vacate the harassment protection order. We find no plain error in the trial court's order dismissing the sexual assault protection order, and we therefore affirm that portion of the June 11 order.

JUDGMENT IN NO. S-18-657 REVERSED, AND
CAUSE REMANDED WITH DIRECTIONS.
JUDGMENT IN NO. S-18-658 AFFIRMED IN
PART, AND IN PART REVERSED.