IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

TRISHA L. V. J. MICHAEL S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TRISHA L., APPELLEE,

V.

J. MICHAEL S., APPELLANT.

Filed April 7, 2020.    No. A-19-745.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Justin D. Eichmann, of Houghton, Bradford & Whitted, P.C., L.L.O., for appellant

No appearance for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

J. Michael S. (Michael) appeals from a harassment protection order entered by the Lancaster County District Court continuing an ex parte harassment order against Michael for the protection of Trisha L. until May 1, 2020. Michael claims there was insufficient evidence to issue the protection order. We conclude otherwise and affirm the district court's order.

## BACKGROUND

On May 1, 2019, pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2018), Trisha filed a petition and affidavit to obtain a domestic abuse protection order against Michael and solely for her own protection. Trisha's affidavit included the following allegations.

Trisha met Michael in 2012. They began dating in 2014. Initially, the relationship was "fine" but as time went on Michael's "anger, aggression, and mood swings" became "more apparent" to Trisha. There were times Michael treated Trisha "very nice" and other times when he

- 1 -

would "scream and yell" at her or become "very agitated in public." Trisha went to a counselor with Michael and met his psychiatrist to "try to get him help." At the appointment, Michael became "violently angry" and the psychiatrist asked him to leave 5 minutes ahead of Trisha. As a result of those appointments, Trisha decided she wanted to end the relationship but "wasn't sure of exactly how to get out of the relationship and feared his temper." She maintained telephone, text, and email conversations with Michael over several months but did not go on a "date" with him (Trisha had not gone out with Michael on a "date" for a couple of years). Trisha did not feel safe around Michael because of his "anger and mental instability." She alleged that upon his request, she tried to give him back his items in March 2018, but he ended up throwing them on her lawn and driving away. Trisha "repeatedly" asked Michael to stop calling and texting but he "continued," along with leaving "notes and things" at her house.

Trisha "blocked" Michael's cell phone number and emails in September 2018. Then he began sending her "things" through the mail. When she returned "those" (the mail), Michael taped letters to her front door in October 2018; she said she filed a police report. Trisha described that in the letters, Michael threatened to sue her for $1,500,000 and to sue her and her workplace (a hospital) for $11,850,000. There was one notarized letter in which he requested $2,175,000. Michael demanded Trisha "start making payments" to him or "'it will be very ugly.'" He threatened to humiliate Trisha to her family, friends, ex-husband, and coworkers; would "work" to have Trisha's professional license revoked; and would "make sure" she could no longer work.

Trisha noted that in February 2019, Michael sent packets in the mail to her and her brother, parents, and ex-husband that included a book titled "'stop walking on eggshells [sic]'" as well as an 8-page letter "attack[ing]" Trisha's character. The packet sent to Trisha also had a lengthy letter "filled with anger" and "very negative assaults of what a terrible person [she is]"; although there was a "thread of truth" in the interactions described, they were a "warped perception of how [Michael] sees things." She was concerned with his "anger," "excessive emotion," and "the number of pages, time, and research" that went into forming the letters. Trisha asserted that Michael had previously called her parents and tried to talk to them about her; it "greatly upset them." Trisha claimed that Michael had called her ex-husband at his work and left a message that he was concerned about the safety of Trisha's (and the ex-husband's) daughter; Trisha's ex-husband called Michael back and felt the "things he was saying had no validity."

Trisha alleged that on April 19 and 24, 2019, Michael picketed outside the hospital where she worked. Michael carried signs that read "'Trisha [L.] abuses patients!'" and "'Trisha [L.] lies about her co-workers!! do [sic] ethics matter?'" He walked near the opening of Trisha's parking garage in one instance. Trisha called hospital security and the police department to make a report each time. Michael left after hospital security talked to him. Trisha called the allegations on Michael's signs "false" with a potential to affect her professional reputation. After Trisha posted Michael's picture at work as a "person not to let in the locked doors of [the department in which she worked]," she learned he had been on her department floor asking to speak to the manager.

Trisha alleged that Michael had continued to "carry out" threats; disrupt her life; and contact her family, friends, and coworkers. Michael was "now" disrupting "things" at her job. Trisha was concerned that the situation was "escalating." She was "unsure of his end goal and how far he will take this." According to Trisha, Michael was unhappy with their relationship ending

and would not leave her alone. Even though he lived in Omaha, Nebraska, he was continuing to make trips to Lincoln, Nebraska (where she lived) to "harass" her. She noted that Michael knew her daily routines and her friends, where she and her family lived, and where she worked as well as the name of her minor daughter (from her prior marriage) who lived with her and the names of her grandchildren who were in her home 1 day a week. Trisha asserted that she did not feel safe at home or at work.

On May 1, 2019, the district court issued a 1-year ex parte harassment protection order pursuant to Neb. Rev. Stat. § 28-311.09 (Reissue 2016). Michael was enjoined from imposing any restraint upon the person or liberty of Trisha; harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of Trisha; or telephoning, contacting, or otherwise communicating with Trisha. Thereafter, Michael, pro se, filed a request for a hearing, which request was granted.

The hearing took place on June 10, 2019. Trisha and Michael each appeared pro se. They both testified under oath in narrative form and upon questioning by the district court. Five exhibits were received into evidence. At the outset of the hearing, Trisha affirmed the truth and accuracy of the information in her petition and affidavit, which was received into evidence (exhibit 1). Michael was then given an opportunity to testify as to the parts of the petition and affidavit with which he agreed or disagreed.

Michael testified that he took Trisha to meet his psychiatrist "in the beginning" and had his psychiatrist provide her with his "diagnosis" to be "fair" to her so she knew what she was "getting into" and to prevent her from harming his "recovery." Michael felt Trisha had an ethical obligation not to "harm" him after she learned of his "diagnosis." He said Trisha violated "HIPAA law" repeatedly in her "filings [sic]" by stating that he was seeing a psychiatrist for care. Trisha engaged in a "vexatious campaign of vilification and slander" against him when contacting his friends and engaged in a "vicious campaign of defamation" against him by contacting "business associates, shareholders, and investors."

Michael claimed that he and Trisha were separated by the psychiatrist in one instance not because of a "physical threat" but because Trisha was "still lying" after "all [they] had been through and all of the money[,] time[,] and effort spent"; the psychiatrist thought Michael and Trisha needed "a couple minutes apart." Michael disputed that he threw Trisha's property all over the lawn and driveway in March 2018 (Trisha's petition alleged that Michael threw *his* items on her lawn after she tried to give them back in March).

Michael did not know if Trisha blocked his number and emails in September 2018. But he acknowledged that she asked him to stop calling and texting her "[a] long time ago" and had asked him to stop leaving notes and things at her home. He recalled sending Trisha two letters, one of which was "returned to sender." He agreed that he taped a letter to her front door in October. Michael believed threatening to sue Trisha was justified. He pledged to start taking legal action if Trisha did not withdraw her petition and affidavit, meet with his psychiatrist to address her (Trisha's) "ethics issues," and meet with his attorney and "negotiate" a "settlement." However, Michael claimed he did not want to file for a "restraining order" or "cease and desist order" against Trisha. Nor did he want to file an "ethics complaint" or otherwise sue her. Michael denied that he threatened to humiliate Trisha and her family, friends, ex-husband, and coworkers. Michael said,

"No matter how pissed off I am at a woman, there are usually only two consequences. I'll yell back and I'll walk out. That's it, and [Trisha] knows it."

Michael admitted that in February 2019, he mailed letters or packets to Trisha and her brother, parents, and ex-husband. But he disputed the allegations in Trisha's affidavit describing that mail and the telephone calls to Trisha's parents and ex-husband (Michael later testified that he had a "pleasant and friendly" exchange with Trisha's father over the telephone in November 2018). Michael recognized exhibit 5 as the packet he had sent to Trisha and her family.

Exhibit 5 contains one 8-page letter (dated February 1, 2019) evidently written out to Trisha's family and ex-husband and signed by Michael. Among other numerous allegations about Trisha, Michael wrote about Trisha's character, intellectuality, and mental state (i.e., five visits to psychiatrist for Trisha's "Borderline Personality Disorder" with "Narcissistic Personality Disorder tendencies"; "Trish is an alcoholic"; "Trish feels 'stupid'" but "is, definitively, not stupid"; "I [(Michael)] had to teach her so often; I think she came to feel inferior intellectually"). Michael also reflected on several of their disagreements and about intimate details of their relationship. Michael ended the letter by saying he was "genuinely sorry, about the way things turned out" and "was greatly looking forward to being a part of your family." Along with that letter, Michael enclosed his "final letter" to Trisha.

The 20-page letter directed to Trisha has a disclaimer at its top: "Please forgive any anger you perceive . . . vented into a keyboard is the most harmless way I have found to deal with it. Additionally, this letter is intended to be a wake-up call, a metaphorical bonk over the head, so it is a bit more blunt [sic] than I might normally like." (Ellipses in original). The letter includes more allegations about intimate details of their relationship (largely a reflection about the breakdown of it) and self-improvement advice and prayers. Michael included statements such as: "For 4 years, you have shouted me down, screamed at and condemned me, cheated on me, lied to and tried to manipulate me, and all without giving me an adult opportunity to respond"; "You shout a man down for 4 years with lies and made up stuff, whilst he's trying to do great things for you . . . anger is liable to accrue, to understate it a bit"; "we all get to the end one day. You will be next sometime"; and "You do reap what you sow, Trish. What goes around, comes around. Karma does exist." Michael noted he and his dad "really were going to sue" Trisha. However, Michael wrote that suing the "ill" was not "gentlemanly" even though Trisha "probably deserve[s] it, more as a wakening knock over the head than anything else," adding, "but it is just not me."

Despite pages describing with detail the flaws Trisha was said to possess and errors she had allegedly committed, Michael implied she could still "come visit" him--but not until she could be "honest" with him. Michael expressed that she had "so little reason to leave [him]" and that he experienced strong pain because he could not see her children and/or grandchildren anymore. He expressed that Trisha "tore" his "soul" out.

The book, "Stop Walking on Eggshells," was also inside the mailed packet (exhibit 5). The cover of the book states it is about "taking your life back when someone you care about has borderline personality disorder." In the 8-page letter directed to Trisha's family and ex-husband, Michael wrote that he provided Trisha's ex-husband with "copies for the girls [(Trisha's child or grandchildren)]" and "two books that are designed to help children deal with BPD mothers." He also recommended other websites dedicated to borderline personality disorder.

During the hearing, Michael further admitted that in April 2019, he picketed at the hospital carrying signs with the statements about Trisha as she alleged. However, he disputed Trisha's "characterization of it" and that the signs contained false allegations. Michael conceded that he is the individual depicted "protesting" in exhibits 2, 3, and 4 (photographs). Exhibits 2 and 4 show Michael holding a sign outside a commercial building that clearly says "Trisha [L.] lies about her co-workers!! do [sic] ethics matter?" And exhibit 3 shows Michael holding a sign that has four words upon it (unreadable per quality of photograph) next to a man who appears to be a security guard. Also, Michael testified that (at some point) he "stopped by" Trisha's work to speak to a supervisor about "ethics reporting" and left after he learned who to contact to "report ethics violations for employees of the [department in which Trisha worked]"; by his own account, he was on crutches at the time and "certainly did not appear threatening to anyone." He claimed he told Trisha ahead of time that he was going to do that.

Trisha's testimony generally matched her allegations within her affidavit. She reiterated her belief that Michael's behavior was escalating. She expressed that she needed Michael to "leave [her] alone" and agreed that she felt threatened and intimidated.

Michael was given a chance to cross-examine Trisha but did not take that opportunity. He did testify in response to Trisha's testimony. Among other things, he said that Trisha "entered a number of dates into the record which are false"; he asserted that Trisha called him on "October 1st." He denied that he had spoken to Trisha's ex-husband but described a "December 22nd" text message he received from Trisha's ex-husband apparently thanking him for sending four copies of "'Walking on Eggshells [sic]'" and "'Understanding the Bo[]rderline Mother.'" Michael said Trisha had been "grossly unethical" and restated his intent to take legal action against her. At the conclusion of the evidence, the district court took the matter under advisement.

On July 1, 2019, the district court entered a harassment protection order directing that the May 1 ex parte harassment protection order was to remain in effect for a period of 1 year from that date.

Michael, now with counsel, appeals.

## ASSIGNMENT OF ERROR

Michael assigns that the district court erred by finding sufficient evidence to support the harassment protection order.

## STANDARD OF REVIEW

A protection order is analogous to an injunction. *D.W. v. A.G.*, 303 Neb. 42, 926 N.W.2d 651 (2019). Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Id.* In such a de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id.* However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

ANALYSIS

Trisha's petition sought issuance of a domestic abuse protection order under § 42-924. The district court granted Trisha relief in the form of a harassment protection order pursuant to § 28-311.09. As Michael acknowledges on appeal, a trial court has discretion, authority, and jurisdiction to issue a harassment protection order, even though the petitioner filed a petition for a domestic abuse protection order. See *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014).

APPLICABLE LAW

Because the district court issued a harassment protection order, we review the statutes applicable to such orders. Section 28-311.09 provides in relevant part:

> (1) Any victim who has been harassed as defined by section 28-311.02 may file a petition and affidavit for a harassment protection order . . . . Upon the filing of such a petition and affidavit in support thereof, the court may issue a harassment protection order without bond enjoining the respondent from (a) imposing any restraint upon the person or liberty of the petitioner, (b) harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the petitioner, or (c) telephoning, contacting, or otherwise communicating with the petitioner.

The purpose of § 28-311.09, and the definition of certain terms, are contained in Neb. Rev. Stat. § 28-311.02 (Reissue 2016), which provides in relevant part:

> (1) It is the intent of the Legislature to enact laws dealing with stalking offenses which will protect victims from being willfully harassed, intentionally terrified, threatened, or intimidated by individuals who intentionally follow, detain, stalk, or harass them or impose any restraint on their personal liberty and which will not prohibit constitutionally protected activities.
>
> (2) For purposes of sections 28-311.02 to 28-311.05, 28-311.09, and 28-311.10:
>
> (a) Harass means to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose;
>
> (b) Course of conduct means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person.

Application of the law governing harassment protection orders has been summarized as follows:

> "Nebraska's stalking and harassment statutes are given an objective construction and . . . the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007). Thus, the inquiry is whether a reasonable [victim] would be seriously terrified, threatened, or intimidated by the perpetrator's conduct. *Id*."

*Richards v. McClure*, 290 Neb. 124, 132, 858 N.W.2d 841, 847 (2015) (quoting *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013)) (brackets in original).

EVIDENCE OF HARASSMENT

Michael contends that the evidence failed to substantiate a "'serious' terror, threat or intimidation to [Trisha]"; that the evidence failed to "identify threats of harm or terror beyond [Michael's] assertion of his legal claims against" her, and that there was a lack of any course of conduct by Michael "that was actually intimidating." Brief for appellant at 14. However, our review of the record shows otherwise.

Trisha testified about how Michael committed a series of acts directed at her which made her feel threatened and intimidated; she averred that her submitted petition and affidavit (exhibit 1), in which she set forth Michael's conduct, was truthful and accurate. Whatever the cause of the end of the parties' dating relationship, Trisha was the one who decided to end it and Michael persisted in maintaining contact with her despite her repeated requests for him not to do so. The record reflects that the relationship ended sometime in 2017 or early 2018. Trisha tried to return Michael's items to him as he requested in March 2018, but he threw them on her lawn and drove away (undisputed by Michael during the hearing). Thereafter, she repeatedly asked Michael to stop calling and texting her (Michael admitted during the hearing that Trisha made that request "[a] long time ago"). But, according to both parties, Michael continued to try to communicate or contact Trisha even after that. Trisha "blocked" Michael's cell phone number and emails in September 2018; she testified she had not had any communication with him since then (Michael asserted she had called him on "October 1st" but did not specify a year).

Michael admittedly sent Trisha mail in September 2018, which she said she returned. Michael conceded that he taped letters to Trisha's front door in October and that he threatened to sue her (according to Trisha, one letter contained a demand that she "start making payments" to him or "'it will be very ugly'"). Trisha also claimed he threatened to humiliate her to her family, friends, ex-husband, and coworkers (Michael denied that). During the hearing, Michael stated he planned to lodge legal or ethics claims against Trisha. Michael admitted to sending mail packets of lengthy letters and the previously noted book to Trisha and her family, such as the one admitted into evidence with one of the letters dated February 1, 2019 (exhibit 5). Exhibit 5 reflects the packet was also sent to Trisha's ex-husband. Exhibit 5 contained highly personal content and attacks toward Trisha (albeit written under the claimed intent of wanting to help her); it is fair to say the letter was "filled with anger," as Trisha alleged in her affidavit.

After the various forms of written communication sent to Trisha and her family and ex-husband were not enough, Michael admitted that in April 2019, he twice picketed outside the hospital where Trisha worked with signs saying, "Trisha [L.] lies about her co-workers!! do [sic] ethics matter?" and "'Trisha [L.] abuses patients!'" Exhibits 2, 3, and 4 confirm this conduct; Michael admitted he was the protester shown in those exhibits. Trisha alleged she had called hospital security and the police department to make a report for each incident, and exhibit 3 shows an apparent security guard next to Michael. Trisha learned Michael had been on her work floor before those incidents and had asked to speak to her manager; Michael confirmed that by his own testimony.

Trisha indicated that Michael had anger management issues, which Michael did not specifically dispute during the hearing (rather, he testified that he had a psychiatrist and indicated that he had a "diagnosis" from that psychiatrist). Despite Trisha's request that he stop communicating with her, Michael kept steadily trying to contact Trisha over a 1-year period by any means necessary. Trisha's concern that Michael's acts directed at her were escalating is supported by the evidence presented. We find that Michael engaged in a knowing and willful course of conduct directed at Trisha and that a reasonable person would be, at a minimum, seriously intimidated or threatened by such conduct. Further, although Michael believes otherwise, on the record before us we find that his course of conduct did not serve any legitimate purpose. See § 28-311.02(2)(a) (definition of harass). Accordingly, the evidence was sufficient to issue a harassment protection order against Michael and in favor of Trisha pursuant to § 28-311.09(1).

Michael asserts (without citing to any specifics in the record) that "many" of Trisha's allegations and her testimony are "foundationless" and attempt to speak to the experiences of other persons; he seems to be suggesting that any such evidence should have been given less evidentiary weight. Brief for appellant at 15. But he fails to note that the bulk of information in Trisha's affidavit is based on her personal knowledge. The same applies to her testimony. Additionally, she submitted exhibits 2, 3, 4, and 5, which confirmed her most recent allegations. And, as discussed previously, Michael himself conceded to the veracity of several of Trisha's allegations. Compare *Glantz v. Daniel, supra* (insufficient evidence for harassment protection order; petitioner's testimony related to suspicions and belief that respondent had taken certain action against her, but petitioner was unable to adduce any confirming evidence that defendant was the actor). Further, under the circumstances presented here, any of the few remaining disputes about material facts concerning the content of Trisha's affidavit were best considered by the district court. See *D.W. v. A.G.*, 303 Neb. 42, 926 N.W.2d 651 (2019) (where credible evidence is in conflict on material issue of fact, appellate court considers and may give weight to circumstances that trial judge heard and observed witnesses and accepted one version of facts rather than another).

Michael also relies on the concept of remoteness of claims, as discussed in *Sarah K. v. Jonathan K.*, 23 Neb. App. 471, 873 N.W.2d 428 (2015) (domestic abuse protection order case). In that case, we noted that remoteness of past abuse is a matter for a court to consider in weighing the evidence before it while deciding whether to issue a protection order. Michael argues there has been "no contact between [the parties] since September 2018," besides "an instance of picketing outside [Trisha's] hospital or send[ing] [her] a letter." Brief for appellant at 15. We disagree with Michael's minimization of the record. The evidence of Michael's course of harassing conduct has only escalated since sometime after March 2018. Trisha blocked technological communication from Michael in September 2018, thereby successfully avoiding receiving that kind of contact from Michael since that time. Michael continued to try to reach her by a variety of other methods. Trisha filed her petition and affidavit on May 1, 2019, with the last alleged instances of harassment occurring in February and April. The evidence of harassment here is not remote.

Finally, Michael argues that the Nebraska Legislature "specifically cautioned against considering a respondent's exercise of his constitutional rights as grounds for harassment," and that he cannot be prohibited from his "constitutional right" to protest outside Trisha's workplace. *Id*. at 15-16. Section 28-311.02(1) states the Legislature's intent to enact laws dealing with stalking

offenses "which will protect victims" from harassment *and* "which will not prohibit constitutionally protected activities." The relevant legislative intent therefore is aimed at balancing two competing interests: that of a victim-petitioner to enjoy life free of harassment and that of a perpetrator-respondent to his or her constitutionally protected activities.

Michael does not provide any authority to support how his actions outside the hospital were constitutionally protected in this instance, and we need not engage in further discussion on that issue here since Michael's protests outside of Trisha's workplace were part and parcel of a series of ongoing harassment actions against Trisha, including other actions he took at the hospital such as walking near her parking garage and walking around her department floor allegedly seeking out a manager. Thus, under § 28-311.09(1) the district court had the authority to issue a harassment protection order in Trisha's favor to enjoin Michael from acts directed at Trisha regardless of whether Michael may have been able to engage in a "peaceful protest outside of the hospital," brief for appellant at 16, under other circumstances. See § 28-311.09(1) (where harassment protection order is warranted, respondent may be enjoined from imposing any restraint upon person or liberty of petitioner; harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing peace of petitioner; or telephoning, contacting, or otherwise communicating with petitioner).

The evidence was sufficient to support the district court's entry of a harassment protection order.

CONCLUSION

Based on our de novo review of the record, we affirm the harassment protection order issued by the district court.

AFFIRMED.

- 9 -