IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

CASTILLO V. SMITH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TAMMY D. CASTILLO, APPELLANT,

V.

JERRY L. SMITH, JR., APPELLEE.

Filed November 10, 2020.    No. A-20-286.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Katelyn Cherney and Christopher A. Mihalo, of Milton R. Abrahams Legal Clinic, for appellant.

No appearance for appellee.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Tammy D. Castillo applied for a domestic abuse protection order against Jerry L. Smith, Jr., on behalf of herself and her minor child. The district court for Douglas County issued an ex parte protection order, and then after a show cause hearing, the court declined to extend the domestic abuse protection order but instead issued a harassment protection order on behalf of Castillo but not her child. Castillo appeals. Upon our de novo review of the record, we affirm.

## BACKGROUND

On February 10, 2020, Castillo filed a petition and affidavit to obtain a domestic abuse protection order for herself and her minor child, K.S., against Smith under Neb. Rev. Stat. § 42-924 (Supp. 2019). Smith is the father of K.S. The district court issued an ex parte domestic abuse

- 1 -

protection order the same day. Smith requested a hearing on the matter pursuant to Neb. Rev. Stat. § 42-925 (Cum. Supp. 2018) to show cause why the protection order should not remain in effect.

At the show cause hearing, the district court received Castillo's petition and affidavit into evidence. Castillo testified that the allegations contained in her affidavit were true and accurate. The affidavit details an incident that occurred on February 8, 2020, where Castillo alleged that Smith was drinking alcohol at K.S.' basketball game and then later took K.S., age 8, into a bar with him. The affidavit alleges that later that evening, Smith left a voicemail for Castillo, telling her that he was going to "dig [her] a hole" and "bury [her] in the ground." Smith then continued to send text messages to Castillo, in which he told her that he wished she would "just pass away."

In the affidavit, Castillo described her ongoing concerns with Smith's alcohol consumption and mental health issues. She claimed that Smith is prescribed medication, but refuses to take it. She also indicated that he was living with a "felon" and another person who had recently been incarcerated. Castillo wrote that she was concerned that something might happen to her or K.S. because of Smith's drinking or the people with whom he associates.

At the show cause hearing, Castillo additionally explained that Smith has told her "to go jump off a bridge" and that he wishes she was dead, and called her names. She said that she is afraid for K.S.' well-being because Smith told her that if she takes K.S. from him, neither one of them will have K.S.

Castillo also testified that she did not know what Smith might do as a result of his heavy drinking, mental health issues, and refusal to take his medication. She stated that she fears for her own safety and that of K.S. She was asked what she thought Smith might do to K.S. and she said she did not know, citing his "mental state," heavy drinking, poor decisions, people with whom he associates, and the fact that he drinks and drives with K.S. in the vehicle.

Smith also testified at the hearing and denied the allegations in Castillo's petition. He denied drinking at K.S.' basketball game and said that he took K.S. bowling and then they stopped at a bar to see the owners. He did not recall any specific text messages he sent to Castillo, but stated that Castillo "always texts" him and they text back and forth, saying "rotten things" to each other.

At the conclusion of the hearing, the district court took the matter under advisement. It subsequently issued a written order declining to extend the domestic abuse protection order. The court took judicial notice of the pleadings in a pending custody case involving the parties. It noted that in that case, Smith was seeking joint legal custody of K.S. but only parenting time, not physical custody, and observed that the parties had been unable to mediate a parenting plan. However, relying upon *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994), the court found that the natural mother in a paternity case has automatic custody of a minor child and that custody can be modified at a later date; it therefore determined that K.S. need not be included in a protection order. Finding that the evidence presented at the hearing was sufficient to issue a harassment protection order, the district court did so on behalf of Castillo only. Castillo appeals.

ASSIGNMENTS OF ERROR

Castillo assigns that the district court erred in (1) rescinding the ex parte domestic abuse protection order, (2) taking judicial notice of the paternity action and using that as grounds to deny the domestic abuse protection order, and (3) removing K.S. as a protected party in the order.

STANDARD OF REVIEW

A protection order is analogous to an injunction. *D.W. v. A.G.*, 303 Neb. 42, 926 N.W.2d 651 (2019). Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Id*. In such a de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

ANALYSIS

Castillo argues that the district court erred when it rescinded its ex parte domestic abuse protection order because the evidence was sufficient to extend it. We disagree.

Before examining the evidence before the district court, we note that the change in the language of Neb. Rev. Stat. § 42-925(7) (Supp. 2019) which authorizes a court to treat a petition for a domestic abuse protection order as a petition for a harassment protection order distinguishes this case from prior case law that addressed whether a trial court's issuance of a protection order of a type other than the type requested was proper. See, e.g., *D.W. v. A.G., supra*; *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010). We therefore need not address the court's authority to do so.

Turning to the merits of Castillo's argument, we conclude that the district court did not err in declining to extend the ex parte domestic abuse protection order because the evidence does not meet the statutory definition of abuse.

Any victim of domestic abuse may seek a domestic abuse protection order. § 42-924. Whether domestic abuse occurred is a threshold issue in determining whether an ex parte protection order should be affirmed; absent abuse as defined by § 42-903, a protection order may not remain in effect. § 42-924; *Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 928 N.W.2d 407 (2019).

"Abuse" as used in Neb. Rev. Stat. § 42-903(1) (Cum. Supp. 2018) means the occurrence of one or more of the following acts between family or household members:

(a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;

(b) Placing, by means of credible threat, another person in fear of bodily injury . . . or

(c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318.

Family or household members include persons who have a child in common whether or not they have been married or have lived together at any time. § 42-903(3).

There were no allegations or evidence that would support a finding of abuse under § 42-903(1)(a) or (c); thus, in order to justify extending the domestic abuse protection order, Castillo was required to prove that Smith placed her in fear of bodily injury, by means of credible threat. Section 42-903(1)(b) defines credible threat as a verbal or written threat, including a threat performed through the use of an electronic communication device, or a threat implied by a pattern

of conduct or a combination of verbal, written, or electronically communicated statements and conduct that is made by a person with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family. "Threat" is not further defined, so our basic principles of statutory interpretation require us to give the word its plain and ordinary meaning. *Robert M. on behalf of Bella O. v. Danielle O., supra*. The plain and ordinary meaning of "threat" is a communication, declaration, or expression of an intention to inflict harm or damage. *Id*.

The evidence in this case generally establishes Castillo's concerns regarding Smith's drinking and mental health issues, including her claims that he is not taking medication that he is prescribed and is surrounding himself with undesirable people. Castillo indicated that Smith has communicated to her that he is "not all there," that she "better watch out," that he was "going to dig [her] a hole" and "bury [her] in the ground," that he wished she would "just pass away," and that she should "go jump off a bridge." She also generally alleged that Smith has threatened her and indicated that she has "plenty of threats via text." She did not expand on the nature of these threats, however.

We conclude that the above described evidence is insufficient to support a finding of a credible threat of harm. The vast majority of Smith's comments to Castillo, while inappropriate and undesirable, do not communicate an intent to harm her or K.S. Wishing that she were dead or telling her to jump off a bridge do not evidence Smith's intent to harm Castillo. Even if we interpret the voicemail of burying Castillo in a hole in the ground as a threat to inflict harm on her, this single threat, alone, is insufficient to justify the extension of the domestic abuse protection order. See *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018) (single incident of violence with no pattern of physical force insufficient to support extending domestic abuse protection order). The evidence of Smith's alcohol consumption and unmedicated mental health issues are concerning and it is understandable that Castillo would want to protect herself and K.S. from them; however, this evidence does not meet the definition of domestic abuse to support extending the domestic abuse protection order. The district court therefore did not err in this regard.

Castillo also argues that the district court erred in taking judicial notice of the pending paternity action between the parties and using that as grounds to deny the domestic abuse protection order. Having found that the evidence was insufficient to establish domestic abuse, the district court did not err in declining to extend the domestic abuse protection order on behalf of Castillo or K.S.

Finally, Castillo claims that the court erred in removing K.S. as a protected party when it issued the harassment protection order. We disagree.

The harassment protection order was issued pursuant to Neb. Rev. Stat. § 28-311.09 (Supp. 2019), which provides that any victim who has been harassed as defined by § 28-311.02 may file a petition and affidavit for harassment protection order. For purposes of § 28-311.09, harass means to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose. Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2016). Course of conduct means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing continuity of purpose, including

- 4 -

a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person. § 28-311.02(2)(b).

The evidence in the present case does not establish that Smith harassed K.S. as that term is defined in § 28-311.02. Castillo did not claim that Smith ever followed, detained, or restrained K.S. or that he repeatedly contacted K.S. The evidence Castillo presented regarding K.S. indicates that Smith has a history of not taking him to school and that Smith does nothing with or for K.S. when they are together. Further, Castillo testified at the show cause hearing that Smith drinks alcohol and drives with K.S. in the vehicle. As acknowledged above, while Smith's behavior is certainly concerning and we understand Castillo's desire to protect K.S., these actions are insufficient to establish that Smith is harassing K.S. to support inclusion of K.S. in the harassment protection order. As a result, the district court did not err in declining to include K.S. in the harassment protection order it issued in favor of Castillo.

We observe that Castillo argues that because the district court did not put forth the harassment protection order theory until after the close of evidence at the show cause hearing, she did not have an opportunity to present evidence as to whether K.S. was seriously terrified, threatened, or intimidated by Smith's conduct and, thus, a victim of harassment. However, as stated at the outset of our analysis, Castillo did not assign this as error. Consequently, we do not address her argument. See *Adair Holdings v. Johnson*, 304 Neb. 720, 936 N.W.2d 517 (2020) (to be considered by appellate court, alleged error must be specifically assigned and specifically argued in brief of party asserting error).

CONCLUSION

The district court did not err in declining to extend the domestic abuse protection order or failing to include K.S. in the harassment protection order. The court's order is therefore affirmed.

AFFIRMED.