IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


NEAL V. SOLORZANO


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


DELISHA NEAL, APPELLEE,

V.

MARIO LEACH SOLORZANO, APPELLANT.


Filed June 4, 2024.    No. A-23-544.


Appeal from the District Court for Scotts Bluff County: JAMES M. WORDEN, Judge. Affirmed.

William E. Madelung, of Madelung Law Office, P.C., L.L.O., for appellant.

No brief for appellee.


MOORE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Mario Leach Solorzano appeals the order of the district court for Scotts Bluff County granting Delisha Neal a domestic abuse protection order naming Neal and her minor son as the protected parties. On appeal Solorzano contends that the evidence was insufficient to prove that his actions constituted abuse as defined by the applicable statute. We disagree, and therefore affirm.

## BACKGROUND

On June 12, 2023, Neal filed a petition and affidavit to obtain a domestic abuse protection order against Solorzano, her former boyfriend. She asserted that on June 9, Solorzano was verbally aggressive over a text message and set forth the particular language used, including "if you just listened when I said stop it wouldn't have come to this" and claiming that he "threaten[ed] to have

- 1 -

take [sic] unborn unspoken child." She also asserted that on June 10 Solorzano physically assaulted her following a text message she received from him at 3 a.m. demanding her to come outside. When she did not comply, he "barge[d] into apartment pushing through crowd, grabbed [her] by [her] shirt at the bottom of [her] neck and pulled [her] out of the apartment." Thereafter, he spit in her face and after leaving, sent her a text message stating "fuck you." The third incident Neal listed in her petition occurred the next morning on June 11 at 7 a.m. According to Neal, Solorzano arrived at her house and began verbally harassing her, calling her names and telling her "the cops don't believe [her] little story." He then threatened Neal's friends who were at the house and tried to hit them head on once they were in their respective cars.

The court granted an ex parte order and Solorzano requested a hearing. At the hearing where neither party was represented by counsel, the court indicated that Solorzano had also filed a petition for a domestic abuse protection order against Neal. Solorzano indicated at the hearing that he was willing to dismiss his petition if Neal would do the same. Neal refused.

Both parties presented evidence in support of their respective petitions. Solorzano offered five exhibits into evidence including photographs, text messages, a handwritten note, and a phone call log. In addition to Neal's testimony, Neal called a friend to testify who witnessed the events of June 10 and June 11, 2023, as described in her petition.

Neal testified that although she and Solorzano initially had an "amazing relationship," shortly before a trip the two of them took together at the end of May 2023, Solorzano told her "act right for six more days and then [she could] do whatever [she] want[ed]." She explained that "[i]t was always what [Solorzano] wants, what [Solorzano] wants . . . so you need to get over it."

Neal described the incident of June 10, 2023, identified in her petition. She stated that she was at an "after-party" when she received a text message from Solorzano telling her to come outside. When Neal responded "no," Solorzano "barged in through the door. He pushed through the crowd, grabbed [her] by both [her] nape of [her] neck at [her] shirt and [her] arm and ripped [her] out of the party." He tried to fight one of the attendees, but someone intervened. Solorzano then "turned around and got over [her] face, yelled fuck you right in [her] face, and then hacked a loogie and spit it in [her] face."

Neal explained that it was at this point she became scared of Solorzano. She moved out of her apartment because he continued to show up "ringing [her] doorbell a million times and hiding from the view where [she] could see him." He would stand outside of her apartment yelling to her and "flipping" her off. She described that she felt as though she could not be at home anymore and that when she is in public and a door opens, she is scared that Solorzano is going to walk through it.

Neal called a friend to testify regarding the events at the after-party. This friend relayed events that occurred earlier in the evening, apparently through text messages, between Neal and Solorzano in which Solorzano "was just being mean." She corroborated the encounter Neal described in which Solorzano grabbed her and spit in her face. She also elaborated on the events that occurred the following morning when he showed up at Neal's apartment as described in Neal's affidavit. The friend testified that when one of Neal's friends left her apartment, Solorzano followed him and almost hit him. She described that since then, Neal has been "extremely" scared and does not want to go out anymore.

Solorzano denied ever having grabbed Neal by her shirt or "yank[ing]" her out of the party; rather, he described that his arm was behind her as he "escorted" her out. He admitted being angry but denied spitting at her. He claimed he was the one who suffered an injury--scratch marks from behind his ear down to his shoulder, caused by Neal. He relayed, however, that he told officers that he did not want to press any charges.

The court ruled from the bench, dismissing Solorzano's petition, finding no cause for its continuation, and granting Neal's continued protection order. It explained that although the allegations involved "relational issues," they also involved Solorzano pursuing someone in their home and in their personal life. He found Neal's witness a credible corroborating witness which weighed "heavily" in Neal's favor. Solorzano appeals.

## ASSIGNMENT OF ERROR

Solorzano assigns that Neal failed to prove by a preponderance of the evidence that she was a victim of domestic violence within the meaning of the applicable statute.

## STANDARD OF REVIEW

A protection order pursuant to Neb. Rev. Stat. § 42-924 is analogous to an injunction. *D.W. v. A.G.*, 303 Neb. 42, 926 N.W.2d 651 (2019). Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Id*. In such a de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018). However, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

Solorzano assigns that the evidence was insufficient to find that Neal was a victim of domestic violence within the meaning of Neb. Rev. Stat. § 42-903 (Supp. 2023). He concedes that his relationship with Neal was sufficient to meet the criteria of § 42-903(3); however, he contests that the evidence was sufficient to prove that his actions fell within the definition of abuse as set forth in § 42-903(1). We disagree.

Section 42-903(1) states in part

(1) Abuse means the occurrence of one or more of the following acts between family or household members:

(a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;

(b) Placing, by means of credible threat, another person in fear of bodily injury. For purposes of this subdivision, credible threat means a verbal or written threat, including a threat performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct that is made by a person with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family. It is not necessary to prove that the person

making the threat had the intent to actually carry out the threat. The present incarceration of the person making the threat shall not prevent the threat from being deemed a credible threat under this section; . . . .

In the present case, there is no allegation that Solorzano caused, or attempted to cause, bodily injury to Neal; therefore, the question before us is whether the evidence supports a finding of a credible threat as defined under § 42-903(1)(b). Our review of the evidence does not reveal any express verbal or written threat by Solorzano toward Neal; however, a threat implied by a pattern of conduct is sufficient. § 42-903(1)(b).

In *Linda N. on behalf of Rebecca N. v. William N.*, 289 Neb 607, 856 N.W.2d 436 (2014), the Nebraska Supreme Court determined that the "credible threat" language in § 42-903(1)(b) meant that the evidence at trial must include some threat of intentional physical injury or any other physical threat. But given the definition of credible threat to include "a threat implied by a pattern of conduct," and the Supreme Court's guidance in *Garrison v. Otto*, 311 Neb. 94, 104, 970 N.W.2d 495, 502 (2022), that "the court must conduct a wider inquiry that weighs the likelihood of future harm to the petitioner in light of all the surrounding circumstances," we find that Solorzano's conduct placed Neal in fear of bodily injury by means of a credible threat.

In reaching this decision, we begin with the physical altercation that occurred on June 9, 2023, in which Solorzano physically removed Neal from the after-party and spat on her. Given Solorzano's violent behavior as displayed in his intervening altercation with another attendee of the after-party and as displayed the next morning in his attempt to hit the vehicle which Neal's friend occupied, coupled with his persistent subsequent attempts to contact Neal, the likelihood of future harm certainly exists. We therefore conclude that the evidence sufficiently supports a finding that Solorzano placed Neal in fear of bodily injury by way of credible threat implied by Solorzano's conduct. See *Zoey M. v. Everett B.*, A-23-271, 2023 WL 8888650 (Dec. 26, 2023) (finding threat implied by combination of conduct and communications).

CONCLUSION

For the reasons set forth above, we affirm the district court's order affirming the ex parte domestic abuse protection order.

AFFIRMED.

- 4 -